## UNITED STATES *v.* BUTTERWORTH-JUDSON CORPORATION.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 503. Argued November 23, 1925.—Decided January 11, 1926.

Where the answer of an insolvent corporation, in a suit brought by a simple contract creditor for the conservation and disposition of its property for the benefit of its creditors, admitted the allegations of the bill and consented to a decree appointing receivers, *held* that this amounted to the handing over of all the property and business to be administered as a trust fund to pay debts, and was in substance a voluntary assignment within the meaning of Rev. Stats. § 3466, entitling the United States to priority in payment of its claims. P. 513.

9 Fed. (2d) 1018, reversed.

CERTIORARI to a judgment of the Circuit Court of Appeals affirming an order of the District Court which dismissed a petition in intervention filed by the United States, seeking preferred payment of its claim, in a suit to administer and dispose of the assets of a corporation, through receivers, for the settlement of its debts. See also *Price* v. *United States, ante,* p. 492.

*Mr. William Marshall Bullitt,* Special Assistant to the Attorney General, with whom *Solicitor General Mitchell* was on the brief, for the United States.

On the allegations of the bill, the Butterworth-Judson Company was insolvent in the bankruptcy sense, to-wit: the aggregate of all its property was wholly insufficient to pay its debts. That is admitted as true on the motion to dismiss, and establishes the fact of insolvency in the bankruptcy sense required by § 3466, Rev. Stats. *United States* v. *Oklahoma,* 261 U. S. 253.

The "consent receivership" was a "voluntary assignment." What Congress had in mind was to secure a

priority of payment when an insolvent debtor's property was subject to involuntary seizure under the bankruptcy laws, or when the debtor voluntarily assigned it to another. The term "voluntary assignment" denotes not only the instrument by which property is conveyed, but also the act of transfer; and in these different senses, i. e., means and results, it is variously applied in law. Burrill on Assignments, 6th Ed. § 1. There are many cases where transactions have been held to be general assignments without the execution of a formal instrument. *In re Green,* 106 Fed. 313; *Moody* v. *Clinton Wire Cloth Co.,* 246 Fed. 653; *In re Hersey,* 171 Fed. 998; *In re Salmon & Salmon,* 143 Fed. 395; *Gill* v. *Farmers Bank,* 189 Mo. App. 401.

The Company's action was voluntary, in every possible sense of the word. No receiver could have been appointed at the instance of a simple contract creditor. *Hollins* v. *Brierfield Coal & Iron Co.,* 150 U. S. 371. All that the company had to do, to secure a dismissal of the bill and prevent the receivership, was to move to dismiss on the ground that the plaintiff had an adequate remedy at law. *Id; American Mills Co.* v. *American Surety Co.,* 260 U. S. 360. Instead of resisting the effort to transfer all of its property to receivers for application and distribution to the claims of creditors, the Company voluntarily waived its right to object, affirmatively consented to the receivership, and thereby voluntarily enabled the receivers to be appointed, without which acquiescence no court could or would have appointed them. The appointment of the receivers divested the Company from the possession and control of all its property.

The modern "consent receivership" is the plan by which bank creditors and a failing corporation usually coöperate to accomplish the following results, which could not be accomplished except by such coöperation and the voluntary consent of the debtor: (1) Avoidance of

bankruptcy proceedings. (2) Securing the benefit of an equity receivership under which there can be the broadest and most flexible operation of the business as a going concern, absolutely free from harassment or annoyance from creditors seeking to collect their debts. (3) A protective bankruptcy proceeding (frequently).

. It is a commonplace of corporate practice that an equity receivership, combined with a protective bankruptcy, enables a reorganization committee to delay indefinitely non-assenting creditors, to operate the property as a going concern, and to take their own time about the reorganization. This can only be done, however, when there is complete agreement between certain creditors and the insolvent debtor. All this goes to show that the " consent receivership " is a " voluntary assignment " and also an " act of bankruptcy " which it is attempted to camouflage, in order to prevent winding up in bankruptcy. The Government is the one creditor who suffers by this arrangement, as it gets neither (1) its priority for taxes in the bankruptcy proceedings nor (2) its priority under § 3466.

Under the original Bankruptcy Act of 1898, a general assignment was an " act of bankruptcy," even if the debtor was solvent. Therefore, if a " consent receivership " had been held equivalent to a general assignment, such ". consent receivership " would have been an act of bankruptcy, though the debtor were perfectly solvent, but only temporarily embarrassed; and solvent concerns could have been thrown into bankruptcy and wound up. Such a construction of the Bankruptcy Act would have stopped all " consent receiverships," and the courts frequently held that as the Bankruptcy Act was passed for the benefit of debtors, and was in derogation of the common law, it should be strictly construed and that " consent receiverships " were not equivalent to a general assignment, and hence not acts of bankruptcy.

On the other hand, the priority statute was based on public policy, was declaratory of the common law, and was passed for the benefit of the United States. It should be liberally construed. *United States* v. *State Bank of North Carolina,* 6 Pet. 29. Under § 3466 it is necessary, not only that there should be a "voluntary assignment," i. e., a "consent receivership," but there must be also insolvency in the bankruptcy sense. The courts should give a liberal construction to the phrase "voluntary assignment," so as to hold that a "consent receivership" is the equivalent to a "voluntary assignment." The Circuit Courts of Appeals of the First, Fifth and Ninth Circuits hold that a "consent receivership" is the equivalent of a "voluntary assignment;" and the Fifth and Ninth Circuits hold that it also constitutes an "act of bankruptcy." *Davis* v. *Pullen,* 277 Fed. 650; *Davis* v. *Miller-Link Lumber Co.,* 296 Fed. 649; *Bramwell* v. *U. S. F. & G. Co.,* 299 Fed. 705; *United States* v. *Oklahoma,* 261 U. S. 253; *United States* v. *Parker,* 120 U. S. 89; *Equitable Trust Co.* v. *Conn. Brass & Mfg. Co.,* 290 Fed. 712; *Davis* v. *Michigan Trust Co.,* 2 Fed. (2d) 194.

The "consent receivership" was an "act of bankruptcy" committed by the Company, and hence Rev. Stats. § 3466 became operative and the Government was entitled to a priority of payment. As there was no national bankruptcy act in existence during the years 1790–1799, the repeated use of the phrase "act of bankruptcy" or "act of legal bankruptcy" in these priority statutes, referred, not to acts of bankruptcy under the English law (*Conard* v. *Nicoll,* 4 Pet. 291; 1 Kent Com. 343, note 1,) but to acts of bankruptcy under the then existing state statutes, or under any future bankruptcy laws that might be passed by Congress. *Davis* v. *Michigan Trust Co.,* 2 Fed. (2d) 194. Under the original Bankruptcy Act of 1898, there was no provision by which the appointment of a receiver for a debtor could be considered an "act

of bankruptcy." To remedy that situation, Congress amended the Bankruptcy Act in 1903 (32 Stat. 797) by adding to § 3a (4) a provision defining it as an act of bankruptcy where a person, " being insolvent, *applied* for a Receiver or Trustee for his property, or *because* of insolvency, a Receiver or Trustee *has been put in charge* of his property under the laws of a State, of a territory, or of the United States."

The operation of § 3466 is certainly defeated, if a debtor, insolvent in the bankruptcy sense, can, by agreement with a creditor, have the creditor file a suit for a receiver, with an allegation of a lesser kind of insolvency, obtain the appointment of a receiver by consent and then successfully claim that no act of bankruptcy has been committed—when the only reason for the receivership was that the debtor was actually insolvent in the bankruptcy sense. The question presented is whether the Government's priority under § 3466 can be defeated by an agreement, between a creditor and a debtor, to call the debtor's financial condition one thing when the receiver is appointed, whereas, in point of fact, the debtor's condition is something very different; and if that different condition had been truthfully alleged, it would have been an act of bankruptcy and § 3466 would have come into play. The later authorities hold that if a receiver is appointed upon the ground that the debtor is simply unable to pay his debts in the ordinary course of business, when it later develops that the debtor was in fact then insolvent in the bankruptcy sense, such appointment constitutes an " act of bankruptcy." *Hilb* v. *Am. Smelting & Refining Co.,* 235 Fed. 384; *Re Sedalia Farmers Produce Co.,* 268 Fed. 898; *Davis* v. *Michigan Trust Co.,* 2 Fed. (2d) 194. The theory of those cases is that if it subsequently develops that, at the time of the application for a receiver, the debtor was insolvent in the bankruptcy sense, then it was insolvency, whether recognized at the time or not,

which brought about the receivership. The Bankruptcy Act provides that an "act of bankruptcy" by any person shall consist of his having, "being insolvent, *applied* for a receiver or trustee for his property." Although the Company did not, in one sense, apply for a receiver, yet, in substance, that is exactly what it did. The Court would never have appointed the receivers, if the debtor had objected on the ground that the creditor had an adequate remedy at law. It was only by their affirmative co-operation that the court appointed a receiver.

*Mr. H. G. Pickering,* with whom *Messrs. Eldon Bisbee, Henry Root Stern* and *Bertram F. Shipman* were on the brief, for respondents.

The insolvency of a debtor which gives rise to priority in favor of debts due to the United States under § 3466 Rev. Stats. is limited to insolvency manifested in one of the modes specified in the statute. *United States v. Bank of North Carolina,* 6 Pet. 29; *United States v. Canal Bank,* 3 Story 79; *United States v. Oklahoma,* 261 U. S. 253; *United States v. Hooe,* 3 Cr. 73; *Prince v. Bartlett,* 8 Cr. 431; *Thelusson v. Smith,* 2 Wheat. 396; *Conard v. Atlantic Ins. Co.,* 1 Pet. 386; *Conard v. Nicoll,* 4 Pet. 291; *Beaston v. Farmers Bank,* 12 Pet. 102; *United States v. McLellan,* 3 Sumner 3466; *Gallagher v. Davis,* 2 Yeates 548; *Watkins v. Otis,* 2 Pick. 88; *Commonwealth v. Phoenix Bank,* 11 Metc. (Mass.) 129.

As applied to the case at bar the modes in which insolvency must be manifested are all comprehended in the term "act of bankruptcy," as defined in the Bankruptcy Act. *Conard v. Atlantic Ins. Co., supra; Conard v. Nicoll, supra; Beaston v. Farmers Bank, supra; United States v. Clark,* 1 Paine 629; *United States v. King,* 26 Fed. Cas. No. 15,536; *United States v. McLellan, supra; United States v. Hooe, supra; United States v. Howland,* 4 Wheat. 108; *Field v. United States,* 9 Pet. 182; *In re Empire*

*Metallic Bedstead Co.,* 98 Fed. 981; *Vaccaro* v. *Security Bank of Memphis,* 103 Fed. 436; *In re Crum,* 214 Fed. 207; *In re Ambrose Matthews & Co.,* 229 Fed. 309; *United States* v. *Oklahoma, supra.*

In order to give rise to priority under § 3466 in the case at bar, the act of bankruptcy must be such as to divest the debtor of title to its property. *United States* v. *Hooe, supra; Conard* v. *Alantic Ins. Co.,* 1 Pet. 386; *Conard* v. *Nicoll,* 4 Pet. 291; *Beaston* v. *Farmers Bank, supra; United States* v. *Oklahoma, supra; Commonwealth* v. *Phoenix Bank, supra.*

The respondent has not committed an act of bankruptcy and has not been divested of title to its property. *Vaccaro* v. *Security Bank of Memphis, supra; In re Empire Metallic Bedstead Co., supra; Beaston* v. *Farmers Bank, supra; Quincy, M. & P. R. Co.* v. *Humphreys,* 145 U. S. 82; *Great Western Co.* v. *Harris,* 198 U. S. 561; *Pusey & Jones Co.* v. *Hanssen,* 261 U. S. 491; *In re Edw. Ellsworth Co.,* 173 Fed. 699; *In re Morosco Holding Co.,* 296 Fed. 516; *In re Conn. Brass Corp.,* 257 Fed. 445; *Moss Nat. Bank* v. *Arend,* 146 Fed. 351; *Missouri Valley Cattle Loan Co.* v. *Alexander,* 276 Fed. 266; *In re Wm. S. Butler & Co.,* 207 Fed. 705; *In re Gold Run Mining Co.,* 200 Fed. 162; *In re Billy's Ice Cream Co.,* 295 Fed. 502; *United States* v. *Oklahoma, supra; In re Valentine Bohl Co.,* 224 Fed. 685; *In re Spalding,* 139 Fed. 244; *Russell* v. *Place,* 94 U. S. 608; *Davis* v. *Brown,* 94 U. S. 428; *Badger Co.* v. *Arnold,* 282 Fed. 115; *Zugalla* v. *Int. Merc. Agency,* 142 Fed. 927; *Maplecroft Mills* v. *Childs,* 226 Fed. 415; *Anderson* v. *Myers,* 296 Fed. 101; *In re Golden Malt Cream Co.,* 164 Fed. 326; *Exploration Co.* v. *Pacific Co.,* 177 Fed. 825; *U. S. F. & G. Co.* v. *Strain,* 264 U. S. 570; *In re Harper & Bros.,* 100 Fed. 266; *Davis* v. *Stevens,* 104 Fed. 235; *In re Gilbert,* 112 Fed. 951; *In re Zeltner Brewing Co.,* 117 Fed. 799; *In re Burrell,* 123 Fed. 414; *Commonwealth* v. *Phoenix Bank, supra.*

The authoritative construction of the statute and the declared legislative policy with respect to Government priority preclude any extension of § 3466 by construction as contended for by the Government. *Grasellis Chem. Co.* v. *Aetna Explosives Co.,* 252 Fed. 456; *Re Metropolitan Ry. Receivership,* 208 U. S. 90; *Davis* v. *Pringle,* 268 U. S. 315; *United States* v. *McLellan, supra; Conard* v. *Atl. Ins. Co., supra; United States* v. *Bank of North Carolina, supra; Watkins* v. *Otis,* 2 Pick. 88.

The cases in the Circuit Courts of Appeals relied upon by the Government are erroneously decided and do not vitiate the conclusions here reached. *Equitable Trust Co.* v. *Conn. Brass Corp.,* 290 Fed. 712; *Liberty Mut. Ins. Co.* v. *Johnson Shipyards Corp.,* 6 Fed. (2d) 194; *Davis* v. *Pullen,* 277 Fed. 650; *United States* v. *Oklahoma, supra; U. S. F. & G. Co.* v. *Strain, supra; In re Wm. S. Butler & Co., supra; Badger & Co.* v. *Arnold,* 282 Fed. 115; *Davis* v. *Miller Link Lumber Co.,* 296 Fed. 649; *Moody-Horman-Boelahuew* v. *Clinton Co.,* 246 Fed. 653; *Bramwell* v. *U. S. F. & G. Co.,* 299 Fed. 705; *Beaston* v. *Farmers Bank, supra.*

Under the provisions of § 3466 Rev. Stats. debts due the United States are not entitled to priority in consent receiverships.

Mr. JUSTICE BUTLER delivered the opinion of the Court.

April 22, 1922, respondent, a New York corporation, was insolvent within the meaning of R. S. § 3466, and as defined by the Bankruptcy Act. Its debts amounted to approximately $3,000,000, and included $1,154,450 due to the United States. The value of its assets was not in excess of $1,500,000. On that day, the Hay Foundry and Iron Works, a simple contract creditor, on behalf of itself and other creditors, brought suit against the respondent in the District Court for the Southern District of New York. Among the facts alleged are these: Respondent

owed plaintiff $7,988.43 for labor and materials furnished, and was without money to pay its debts then due. The value of its property, if properly and prudently realized on, would be more than enough to pay its obligations. Some of its creditors were threatening to bring suits on their claims; and resulting forced sales of the property would cause great loss to the creditors. Plaintiff believed that the property could be preserved for equitable distribution among those entitled thereto only upon the granting of equitable relief including the appointment of receivers, and that, unless the court would deal with the property as a trust fund for the payment of creditors, it would be sacrificed to the great loss of creditors. More would be realized from a sale if the business was being carried on. The prayer was for the appointment of receivers, and that when found to be just and proper the properties be sold and the proceeds distributed among those entitled thereto. By its answer filed on the same day, respondent admitted all the allegations of the complaint, and, with its consent, the court thereupon made an order appointing receivers. The order recited that it was necessary for the protection of the respective rights and equities of creditors that the property and business be administered through receivers, and gave to them the exclusive possession, custody and control; they were authorized to continue the business until the further order of the court, to make disbursements necessary to preserve the property, and to pay debts entitled to priority.

September 1, 1922, the United States filed proof of the debt due from respondent and claimed priority under § 3466, and later filed its intervening petition, setting forth the facts above stated, and prayed to be adjudged entitled to priority. Respondent moved to dismiss. The District Court granted the motion. Its decree was affirmed by the Circuit Court of Appeals. The case is here on certiorari under § 240, Judicial Code.

The question is whether § 3466 applies. That section and § 3467, *in pari materia,* are quoted in *Bramwell* v. *United States Fidelity & Guaranty Company, ante,* p. 483. The intervening petition shows that respondent was insolvent when the creditor's suit was begun, and the question of priority is to be determined on that basis, notwithstanding the complaint alleged and the answer admitted that respondent was solvent. Respondent's answer admitting the allegations of the complaint and its consent to the court's order constituted a necessary step in the proceedings for the appointment of receivers. *Re Metropolitan Railway Receivership,* 208 U. S. 90, 109, 110; *Pusey & Jones Co.* v. *Hanssen,* 261 U. S. 491, 500. So, with the consent and coöperation of the insolvent debtor, the possession and control of all its property were handed over to be administered by the court through the receivers for the benefit of those whom the court found entitled to it. *Porter* v. *Sabin,* 149 U. S. 473, 479. To induce the action taken by the court, the complaint represented that, if respondent's property was not dealt with as a trust fund for the payment of creditors, they would suffer great loss. It is established that, when a court of equity takes into its possession the assets of an insolvent corporation, it will administer them on the theory that in equity they belong to the creditors and shareholders rather than to the corporation itself. See *Hollins* v. *Brierfield Coal & Iron Co.,* 150 U. S. 371, 383; *Graham* v. *Railroad Company,* 102 U. S. 148, 161. Here, the fund being less than the debts, the creditors are entitled to have all of it distributed among them according to their rights and priorities.

Taken in connection with its insolvency, now conceded, respondent's answer admitting the allegations of the complaint and its consent to the decree appointing receivers amounted to the handing over of all its property and busi-

ness to the receivers to be administered, under the direction of the court, as a trust fund to pay respondent's debts. In substance, the things done by respondent amounted to a voluntary assignment of all its property within the meaning of § 3466. The United States is entitled to priority. *Bramwell* v. *United States Fidelity & Guaranty Company, supra,* affirming 299 Fed. 705; *Davis* v. *Pullen,* 277 Fed. 650; *Davis* v. *Miller-Link Lumber Co.,* 296 Fed. 649. Cf. *Equitable Trust Co.* v. *Connecticut Brass & Mfg. Corp.,* 290 Fed. 712; *Davis* v. *Michigan Trust Co.,* 2 Fed. (2d) 194.

*Decree reversed.*