### In re HOLMES MFG. CO.

### UNITED STATES v. KENNA.

District Court, D. Connecticut. April 13, 1927.

No. 5110.

1. Receivers ⬤⟲92—Receiver may be authorized to carry on business temporarily.

While as a general rule a receiver has no authority as such to carry on the business of

which he is appointed receiver, there is a discretion in the court to permit this to be done temporarily, when the interests of the parties seem to require, and such 'authority carries with it, as a necessary incident, power to incur obligations for supplies and materials.

2. Receivers ⬤⟲128—Receiver's certificates held to have priority over claim of United States for income taxes (Comp. St. § 5908).

Certificates authorized and issued by the receiver for a corporation held to have priority over a lien claimed by the United States under Rev. St. § 3186 (Comp. St. § 5908), for additional income taxes asserted against the corporation for past years, which claim was not filed nor made known to any of the parties until after the receiver's certificates were issued, and where the fund in the hands of the receiver was insufficient to pay the debts and expenses of the receivership.

3. United States ⬤⟲76—Priority of debts due government by insolvent applies only to funds available to pay creditors (Comp. St. § 6372).

The priority given debts due the United States by Rev. St. § 3466 (Comp. St. § 6372), applies only to funds available to pay creditors of the insolvent.

In Equity. In the matter of the receivership of the Holmes Manufacturing Company. On claim of the United States against Frank Kenna, receiver, for taxes. Disallowed.

John Buckley, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn.

Alling, Webb & Morehouse, of New Haven, Conn., for Merchants' Nat. Bank.

Edward J. Brennan, of New Haven, Conn., for receiver.

THOMAS, District Judge. On October 14, 1920, a creditors' petition for the appointment of a receiver was filed in this court. The petition set forth that "it satisfactorily appears that it is absolutely necessary for the preservation of the estate of Holmes Manufacturing Company that a receiver be appointed to take charge of and to hold such estate and that he continue the business of said Holmes Manufacturing Company." On the same day Peter Lenz was appointed receiver. He was authorized to take and hold possession of all of the property, etc., carry on and conduct the business, and purchase new materials and goods as might be necessary to carry out the contracts for working on machinery that had already been contracted for by reliable concerns with the Holmes Manufacturing Company. Mr. Lenz continued to act as receiver until March 16, 1922.

At the time of the appointment of said receiver, the Holmes Manufacturing Compa-

ny was engaged in the production of motion picture projecting machines. Pursuant to the order of court, the receiver continued the production of these projecting machines; it having been represented to the court that the contract promised a profit and it was for the interest of creditors that the business be continued. In order so to continue the business and meet current expenses, the receiver, on March 21, 1921, petitioned the court for authority to borrow $15,000, or any part thereof, to be used by him as receiver for the purpose of paying the expenses and indebtedness already incurred in the management of the estate, and to issue certificates therefor. The petition was granted, and pursuant to the order thereon $15,000 was borrowed from the Merchants' National Bank of New Haven, and receiver's certificates issued as security therefor, and said certificates were payable out of funds that might come into his hands as receiver.

On September 27, 1921, the receiver obtained a further order authorizing him, as receiver, to borrow the further sum of $25,000, based upon his statement to the court that he "is confident of making a profit from the contract with the United Theater Equipment Company; that he has made many changes in the personnel of the organization which he believes will prove beneficial, and, believing that it is prudent to continue the operations, seeks permission of this court to continue his operations as receiver for a period of one year from October 1, 1921." The order authorizing the receiver to borrow money and to issue certificates therefor provided "that these certificates shall be known as the second series of receiver's certificates and shall be secured by all of the property, real and personal, of the Holmes Manufacturing Company, now in the hands of the receiver, and subject only in order of payment to the mortgage and mechanic's lien, amounting to $23,000, on the real estate, and to the first series of receiver's certificates, amounting to $15,000, payable to the Merchants' National Bank of New Haven, Conn." Pursuant to said order, the sum of $24,889.55 was borrowed and certificates issued therefor. All of said certificates, which are represented by the first and second issues, are still outstanding and unpaid.

On September 28, 1922, Frank Kenna was appointed receiver to succeed Peter Lenz, said appointment to take effect as of March 16, 1922. Mr. Kenna proceeded to wind up the business and convert all tangible assets into cash, which was done prior to March 21, 1923. From the sale of said assets, approximately $18,000 was realized. The real estate was conveyed to the mortgagees, in consideration of the payment of all incumbrances thereon, amounting to $30,400. Of said sum of $18,000 there is now on hand approximately $12,000, out of which there must yet be paid various administration expenses.

The receiver's claim against the United Theater Equipment Company of New York, with whom the receiver contracted for the building of the motion picture projecting machines, and which is now in bankruptcy, was filed in the sum of $52,728.89. This amount represents the indebtedness of the United Theater Equipment Company, and is based upon the appraisal of Messrs. Dibble and Ullman, and is represented by a pattern charge of $4,000, goods in process appraised at $27,071.81, and a labor and material charge incidental to building United Theater Equipment Proctor Motion Picture projector machines by the Holmes Manufacturing Company under Mr. Lenz, receiver. According to the trustee of the estate of the United Theater Equipment Company, the value of the receiver's claim is very doubtful, and probably nothing will be realized on it.

On March 21, 1923, the United States filed a claim against this receivership estate for additional income taxes for the years 1917 and 1918, amounting to $59,285.64, with additional interest and penalties assessed, bringing the total amount alleged to be due to approximately $84,040.95. The government claims that, in accordance with the provisions of section 3186 of the Revised Statutes of the United States (Comp. St. § 5908), the government has a lien upon the property of this company in the amount above mentioned; that in accordance with the provisions of section 3466 of the Revised Statutes (Comp. St. § 6372), the government is entitled to priority in the payment of this tax; that the claim of the United States should be paid before the receiver's certificates, and questions the validity of the receiver's certificates as against the taxes due the United States.

The government contends that this court was without jurisdiction to authorize the issuance of receiver's certificates for the completion of certain contracts for the manufacture of moving picture machines, which the government contends was a purely speculative matter, and had nothing to do with the preservation of the assets of the estate, and that such authorization should be made only where public interests or corporations,

like railroads, are affected; that although the government is entitled to a priority lien for the taxes due it, and is therefore a lienholder, it never consented to the entry of the orders providing for the issuance of receiver's certificates.

The record shows that these certificates were issued March 21, 1921, and on September 27, 1921, and that the claim of the government was not presented until March 21, 1923, so that the consent of the government could not have been obtained before this claim was filed. The record does not disclose any steps taken by the Treasury Department, either to notify any one of the existence of this claim for additional taxes, or to collect them in any way except by presentation to the receiver as above noted.

[1] While as a general rule a receiver has no authority, as such, to continue and carry on the business of which he is appointed receiver, there is a discretion on the part of the court to permit this to be done temporarily when the interests of the parties seem to require it, and in such case his power to incur obligations for supplies and materials incidental to the business follows as a necessary incident to the office. Cake v. Mohun, 164 U. S. 311, 17 S. Ct. 100, 41 L. Ed. 447; Byrnes v. Missouri National Bank (C. C. A.) 7 F.(2d) 978, 980.

In its brief counsel for the United States have cited a number of authorities in support of the contention that this court has no power to authorize the receiver to borrow money and issue certificates therefor for the purpose of carrying on the business, inasmuch as this is a private corporation and not a public one—such as a railroad. The cases, however, do not support that contention. None of them is inconsistent with the general power of the court to authorize a receiver to borrow money, as set forth in Cake v. Mohun, supra. They dealt merely with the power of the court to make such indebtedness a lien paramount to existing liens and displacing them, and incidentally with the necessity of caution in exercising the power to grant authority to borrow. In the present case, no attempt was made to displace existing liens by the lien of the holders of the receiver's certificates. As has been stated above, at the time they were issued, no claim had been made by the government for back taxes. It must therefore be held that the certificates represent a valid indebtedness of the receiver as such.

[2] The government's claim of priority is founded on the provisions of section 3186 and section 3466 of the Revised Statutes

19 F.(2d)—16

(Comp. St. §§ 5908, 6372), which read as follows:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount shall be a lien in favor of the United States from the time when the assessment list was received by the collector, except when otherwise provided, until paid, with the interest, penalties, and costs that may accrue in addition thereto upon all property and rights to property belonging to such person: Provided, however, that such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice of such lien shall be filed by the collector in the office of the clerk of the District Court of the district within which the property subject to such lien is situated; Provided, further, whenever any state by appropriate legislation authorizes the filing of such notice in the office of the registrar or recorder of deeds of the counties of that state, or in the state of Louisiana in the parishes thereof, then such lien shall not be valid in that state as against any mortgagee, purchaser, or judgment creditor, until such notice shall be filed in the office of the registrar or recorder of deeds of the county or counties, or parish or parishes in the state of Louisiana, within which the property subject to the lien is situated."

Section 3466. "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The cases cited by the government in support of its claim for priority are United States v. Butterworth-Judson Corp., 269 U. S. 504, 46 S. Ct. 179, 70 L. Ed. 380; Price v. United States, 269 U. S. 492, 46 S. Ct. 180, 70 L. Ed. 373; Stripe v. United States, 269 U. S. 503, 46 S. Ct. 182, 70 L. Ed. 379, all decided January 11, 1926. These cases, however, are not applicable to the question presented here. They decide the question of priority merely as between the government and general or secured creditors of the insolvent, and not as between the government and creditors of the receiver. The

question involved in those cases is not presented here, inasmuch as the funds in the hands of the receiver are insufficient to pay any of the creditors of the Holmes Manufacturing Company any part of their claims.

The situation in the case at bar is very much like that in Kennebec Box Co. v. O. S. Richards Corporation and United States v. Johnston, 5 F.(2d) 951 (C. C. A. 2d). In this case the government claimed priority in the payment of taxes. The receiver had funds no more than sufficient to pay creditors of the receiver. It was held, first, that there was no basis for the government's claim of a lien under R. S. § 3186, as it did not appear that the requirements of that section had been fulfilled; and, second, that section 3466 did not entitle the government to priority over creditors of the receiver. On this issue, Judge Hough, writing for the court, said (page 952):

"The United States comes into court and asserts in substance that, when the officers of the court have accumulated a fund insufficient to defray the expenses of its accumulation, the Treasury is entitled to take that fund and leave the court expenses unpaid. For purposes of argument only it may be admitted that out of any fund available for paying the debts of an insolvent debtor United States taxes are to be paid first, and in full. But it is elementary that what is available to pay the debts of any debtor must be the property of that debtor. When these claims were presented, that property had all been consumed in the production of the present fund, which equitably belongs to the persons who made it, and they made it, not by giving credit to the insolvent box company, but by giving credit or rendering services to one or another of the various receivers herein. It may well be, as urged by the appellee, that the doctrine of United States v. Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638, * * * disposes of appellant's claim; but we prefer to put decision on the ground that, thoroughly admitting priority in the United States under the statute in any fund available for the payment of this insolvent's debts, there is and can be no claim in favor of even the most preferred of creditors until there is *some* fund available for the payment of all creditors of the insolvent. There is no such fund; consequently the order below was right, and is affirmed."

[3] So far as section 3466 is concerned, the situation in the present case is exactly like that set forth in the case just cited. The decision there, apparently, is not confined to a case where the fund in the hands of the receiver represents the proceeds of property furnished by creditors of the receiver. In the case at bar the sums loaned to the receiver were used in the conduct of the business, and presumably were used in part for the maintenance and preservation of the assets of the insolvent, which were held by the receiver for approximately two years. At least part of the fund was realized from the sale of parts manufactured within that period. There is no surplus for distribution to the general creditors of the Holmes Manufacturing Company. "Until there is *some* fund available for the payment of all creditors of the insolvent, there can be no claim in favor of even the most preferred of creditors." Therefore, on the authority of the Johnston decision it must be here held that the government has no priority by virtue of section 3466.

In that case the learned court did not explicitly decide the application of section 3186, holding that there was no evidence of a lien, inasmuch as it did not appear when the assessment list had ever been delivered to anybody. The District Court, in the same case (299 F. 871), held that no lien on the funds existed, on the ground that it had not been proved to be property belonging to the defendant when the action was begun, but which might have been acquired by the receiver. The same reasoning is apposite to the instant case. It does not seem to me that it was the intention of Congress, in enacting section 3186, to secure a lien to the government on property in the hands of the receiver which is insufficient in amount to pay the expenses of the receiver, incurred under the order of the court, upon the filing of the claim for taxes.

The application of the government is therefore denied.