## SAWYER TANNING CO. v. C. J. O'KEEFE SHOE CO.

District Court, D. Massachusetts. December 20, 1927.

No. 1124.

**1. Internal revenue ⬯25—Where correct amount of income tax in dispute has been definitely ascertained in receivership proceedings tax should be computed and allowed in such amount.**

Where a corporation in its income return in good faith charged off as a loss a claim on running account for goods sold a customer, which claim was subsequently restored by the commissioner and tax assessed thereon for the year of return, but payment remained in abeyance pending receivership for the corporation, and receipt by the receiver of part of the claim has definitely fixed its value, the tax should be computed and allowed on such value.

**2. Corporations ⬯566(1) — Government's claim for internal revenue taxes is entitled to priority in distributing assets of insolvent corporation.**

In distribution of assets of insolvent corporation, claim of government for internal revenue taxes is entitled to priority.

**3. Corporations ⬯565(2)—Interest is recoverable on delinquent tax from insolvent corporation at rate of 6 per cent. per annum (Revenue Act 1918, § 250 [Comp. St. § 6336⅛tt (e)]).**

Although penalty and interest assessed under Revenue Act 1918, § 250 (Comp. St. § 6336⅛tt [e]), is not recoverable on delinquent tax from insolvent corporation, ordinary interest at the rate of 6 per cent. per annum is nevertheless recoverable in accordance with provision in same section for interest in case of delay because of bona fide abatement proceedings, since the exemption of insolvent estates therein from intentionally severe charges does not necessarily imply that claim for ordinary interest is waived.

**4. Internal revenue ⬯27(1)—Government's right to full payment of taxes cannot be defeated, without express declaration or necessary implication.**

The government's right to full payment of its taxes, including interest, is so basic as not to be released without an express declaration or necessary implication to that effect.

In Equity. Suit by the Sawyer Tanning Company against the C. J. O'Keefe Shoe Company. On petition by receiver for instructions as to payment of internal revenue tax. Decree authorized in accordance with opinion.

Lyman K. Clark, of Boston, Mass., for receiver.

J. M. Leinenkugel, Sp. Asst. U. S. Atty., of Washington, D. C.

MORTON, District Judge. This is a petition by the receiver in equity of the C. J. O'Keefe Shoe Company, praying for instructions as to the validity of a claim filed by the collector of internal revenue for additional income (or profits) taxes assessed in 1924 against the shoe company for the years 1919 and 1920. The amount claimed is $54,-836, and in addition interest at 12 per cent. The procedure follows Scott v. Western Pacific Co. (C. C. A.) 246 F. 545.

In so far as the additional tax is based on a reduction by the Commissioner of the shoe company's inventory at the beginning of the year 1919, amounting to $49,288.81, it is now agreed that it was erroneous; the mistake being caused by certain peculiarities in the business and bookkeeping of the shoe company not fully understood by the field agent. So much of the tax as is charged on such reductions should not be paid.

[1] The largest item on which the deficiency tax was based consists of a surcharge of $183,034.09 made by the Commissioner on the bills receivable for the year 1920. The essential facts about it are as follows: In the autumn of 1920 the shoe company was a

creditor of F. H. White & Co. for goods previously sold and delivered, and for other items in an open account to the amount stated. White had resold the goods to the Nemours Trading Corporation, and was in a controversy with it, which held up the payment to him. Without this payment he was unable to pay the shoe company. After earnest, but fruitless, efforts to obtain some payment on the account, which was all overdue, the shoe company charged it off as worthless at the end of the year. The Commissioner, as above stated, restored it and taxed it for the full amount. White had no substantial assets, aside from his claim against the Nemours Company. He made a common-law assignment for creditors in May, 1921. His controversy with the Nemours Corporation had begun in the spring of 1920; and he had brought suit against the Nemours Corporation as early as May, 1920. A bond to dissolve the attachment had been given by the Nemours Corporation in the sum of $1,500,000, and the action was being strongly defended. At the time when the shoe company charged off the claim as worthless, its only chance of getting anything on it depended on White's success in the litigation. The action was prosecuted by his assignees, and eventually, after a long trial, resulted in a judgment for them of $493,000, out of which about $130,000 was paid to the receiver of the shoe company in 1927.

That the account was charged off in entire good faith I see no reason to doubt. At that time O'Keefe knew that there was no prospect of realizing anything on it for a long time, that because of that fact his company must fail, and that there was no probability of White ever being able to pay it in full. It would have been highly fraudulent to represent such an account as a good asset. The proper business courses were either to charge it all off (as was done), or to carry it into a suspense account. O'Keefe is dead, and his evidence is lost.

Whether this claim had any present cash value in 1920 does not appear. It may fairly be assumed, I think, that the amount would have been relatively small—a gambling value mainly. While the details of the claim are not in evidence, I infer from such facts as have gone in that it rested on several contracts and many deliveries. It is not a case of a single contract, such as was under consideration in Lewellyn, Collector, v. Electric Reduction Co., 48 S. Ct. 63, 72 L. Ed. —— (November 21, 1927), and here the claim was charged off within the tax year, while in the Lewellyn Case that was not done

until four years later, and by way of amendment to the original return. Applying the reasoning of the Lewellyn Case, I am of opinion that, at the time when the claim was charged off, events had already proved that it was worth far less than its face value, and that there was no reasonable ground to suppose that it would ever be collected in full; and I so find. In other words, it was clear in 1920 that a heavy loss had been incurred by the shoe company in the White transactions.

The ultimate value of the claim was not ascertainable, either then or in 1924, when the additional tax based upon it was assessed. Now it is known. While ordinarily questions of value are to be determined as of the time when they arise, in certain kinds of cases subsequent facts are taken into account. In liquidation proceedings, disputed claims are tried out and allowed for the amount finally established. That would certainly be the proper procedure between the assignees of White & Co. and the shoe company. The government was not obliged, in assessing its taxes, to await the final determination of the controversy; but where the settlement of the tax has remained in abeyance until the value of the claim has become established, I see no sufficient reason why that fact should not be recognized and the receiver instructed accordingly. When the just result in a commercial affair is plainly evident, courts ought to recognize it, unless prevented by rules of law which, in the interest of broader justice, make that course impossible. The value of the claim in 1920 was $130,000, payable seven years later, a present worth of about $100,000. The shoe company's books may be surcharged to that amount and the tax computed accordingly.

[2] As to priority: The answer in the receivership case against the shoe company consented to appointment of receivers. The corporation is in fact insolvent. It follows that the government is entitled to priority. Bramwell v. U. S. Fidelity Co., 269 U. S. 483, 46 S. Ct. 176, 70 L. Ed. 368; Price, Receiver, v. U. S., 269 U. S. 492, 46 S. Ct. 180, 70 L. Ed. 373; U. S. v. Butterworth-Judson Corp., 269 U. S. 504, 46 S. Ct. 179, 70 L. Ed. 380.

[3] As to interest: This tax was not assessed until three years after the shoe company had gone into the hands of the receiver. It was assessed under the Revenue Act of 1918 (approved February 24, 1919; Comp. Stats. § 6336⅛tt [e]). The provisions of this statute imposing interest on un-

paid taxes expressly except the estate of insolvent persons. As this estate was both in fact and in law insolvent at the time when the tax was assessed and became payable, the government is not by the terms of the act entitled to interest on the tax.

There is a further question, however, whether it does not carry interest as a matter of general law, on the principle that claims which are entitled to full priority of payment, especially taxes, carry interest as against junior claims. See American Iron Co. v. Seaboard Air Line, 233 U. S. 261, 34 S. Ct. 502, 58 L. Ed. 949, First National Bank v. Ewing (C. C. A.) 103 F. 168, 190, and Pearsall v. Central Oil & Gas Co. (D. C. W. D. Pa.) 23 F.(2d) 716. The receiver argues that the careful provisions relating to interest in the act negative any imposition of it by implication; that, if it was intended to require interest on taxes assessed against insolvent estates, it would naturally have been so provided; and consequently that the absence of such a provision implies that interest was not to be exacted in such circumstances, and that the government is content with payment of the tax without insisting on interest at the expense of less favored creditors.

[4] The statute provides that, "if any tax remains unpaid, * * * then, except in the case of the estates of insane, deceased, or insolvent persons, there shall be added as part of the tax the sum of 5 per centum on the amount due * * * plus * * * 1 per centum per month." This amounts to a provision for a penalty and an extremely high rate of interest. U. S. v. Childs, Trustee, 266 U. S. 304, 45 S. Ct. 110, 69 L. Ed. 299. The government's right to full payment of its taxes—which, of course, requires interest—is so basic as not to be lost without an express declaration or necessary implication to that effect. Billings v. U. S., 232 U. S. 261, 284, et seq., 34 S. Ct. 421, 58 L. Ed. 596. The exemption of insolvent estates from such intentionally severe charges does not necessarily imply that the claim for ordinary interest is waived. In the same section it is provided that, where the payment of a tax is delayed because of bona fide abatement proceedings, interest shall be charged at 6 per cent a year. The same rate is fixed in other matters. See R. S. §§ 963, 964, 965 (28 USCA §§ 787–789; Comp. St. §§ 1601–1603). While it cannot be said to be the legal rate in the United States (see Billings v. U. S., supra; U. S. v. Childs, Tr., 266 U. S. 304, 45 S. Ct. 110, 69 L. Ed. 299), I find as a fact that it is the rate which the government ought to receive on this tax to make the payment complete. The question is not free from doubt, and no decision directly in point has been cited either way.

The disallowance of the so-called "machinery reserve" in computing the income, while not free from doubt, is not shown to be erroneous.

The tax is to be recomputed in accordance with this opinion, with interest at 6 per cent., and the government may present a decree for the payment of it.