## AMERICAN MINE EQUIPMENT CO. v. ILLINOIS COAL CORPORATION (two cases).

## ILLINOIS COAL CORPORATION v. MILLER et al. (two cases).

Circuit Court of Appeals, Seventh Circuit. January 4, 1929.

Rehearing Denied April 11, 1929.

Nos. 4056, 4078.

S. O. Levinson, Benjamin V. Becker, Jerome N. Frank, Otis F. Glenn, Arthur C. Bachrach, William J. Friedman, and Max Swiren, all of Chicago, Ill., for appellant.

John C. Slade, of Chicago, Ill., for appellees.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge (after making foregoing statement of facts). The error alleged in decreeing the sale to be made without redemption will be first considered.

The Illinois statutes make provision for redemption from sale of real estate which is "sold by virtue of an execution, judgment, or decree of foreclosure of mortgage, or enforcement of mechanic's lien, or vendor's lien, or for the payment of money," by any defendant, his assigns, or persons interested through the defendant, within twelve months from the sale; and by judgment creditors within three months next thereafter. Pars. 16, 18 and 20, c. 77, Cahill's Ill. Stats.

Statutes providing for redemption from judicial sales constitute a rule of property in their respective states, and are binding upon courts of chancery as well as law, and will be given effect in the federal courts. Brine v. Insurance Co., 96 U. S. 627, 24 L. Ed. 858.

The pertinent inquiry in each case is whether, under the particular facts disclosed, it falls within the scope and intent of the statute. Farnsworth v. Strasler, 12 Ill. 482. Considerations of advantage or disadvantage to the defendant or his creditors do not of themselves determine whether redemption is

properly denied, although possibly throwing light on the conduct and motives of a defendant in ascertaining whether or not he has so acted as to leave him his right of redemption.

For appellant it is contended that the entire proceeding was in its essence a foreclosure of the mortgages and an enforcement of the mechanic's liens, and that in any event the sale was "for the payment of money," and that therefore the statutory right of redemption attaches.

We do not believe that the filing of the foreclosure bills, and their consolidation with the original action, of necessity constituted this sale one under a "decree of foreclosure of mortgage" within the purview of the redemption statute. When the foreclosure bills were filed they were accompanied by appellant's consent that those actions be consolidated with the original action, and that the receivership be extended to the foreclosure bills as well; and when appellant definitely consented that the property might be sold by the receiver free of the mortgage and other liens, and that thereupon the mortgage and other liens attach only to the proceeds, in our judgment it amounted to a waiver or conveyance of the right of redemption as effectually as if one holding an equity in mortgaged property deeded it to a third person with power to sell it and make title to the purchaser, and satisfy the mortgage out of the proceeds. Surely this is so if, as was here the case, the mortgagee consents to this arrangement; for thereby he waives the lien of his mortgage on the property itself, making it impossible for him thereafter to foreclose, and substitutes therefor a claim upon the proceeds, in respect to which no statutory redemption is provided.

Had the original bill proceeded to decree and sale without the filing of the mortgage foreclosure bills, there would be little or no doubt that this conversion of the trust property into divisible form for distribution among the beneficiaries of the trust would not have left a right of redemption in the appellant, the creator of the trust.

We cannot regard the sale as made under a "decree of foreclosure of mortgage," nor, for the same reasons, as one "for enforcement of mechanic's lien." Does it fall within the statutory classification of a sale "for the payment of money," and thus subject to redemption?

For reasons amplified in the discussion which follows, we think not. While every judicial sale, the proceeds of which are in some form to be paid out, is in a sense a sale for the payment of money, if such inclusiveness were given the redemption statute it would cover practically all sales under decrees, such as partitions, administration of trusts, suits for winding up corporations, and the like, to none of which does the right of redemption attach. As will be shown, we regard this sale as one for the conversion of trust property to facilitate its distribution among those entitled to share in it, and not "for the payment of money" within the purview of the redemption statute.

The history of this litigation, as appears from the statement of facts, casts clarifying light on what we regard as controlling inquiries, viz., whether the property sold constituted a trust fund which the court might, through sale, convert and distribute free of redemption, involving the question whether by its conduct appellant conveyed or surrendered whatever right of redemption it may have had.

The original proceeding was one of which chancery had no jurisdiction whatever, except with the cooperation and consent of the appellant. While the bill was in a sense a "creditors' bill," it was, in essence, far more than that. The ordinary creditors' bill is brought by one who, having an unsatisfied judgment, seeks in equity to discover assets to satisfy it. In general, it is brought by a judgment creditor, and does not lie on behalf of one whose claim has not been reduced to judgment.

In Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763, it was said that no receiver can be appointed at the suit of a simple contract creditor, and that even the statute of a state could not confer upon federal courts of chancery such power.

When, therefore, a simple contract creditor files on behalf of himself and all other creditors a so-called protective bill or creditors' bill, asking for the appointment of a receiver and for a general administration of all the affairs of the corporation, and of the marshaling of all its assets; and that all the property of the corporation be constituted a trust fund for the benefit of all the creditors; and to such bill for full administration of the corporate assets, the corporation itself voluntarily enters appearance and distinctly consents to the court's jurisdiction, and, admitting the allegations, consents to the granting of all the relief which the bill seeks—in our judgment such a proceeding, and the status of the property coming into the receiver's hands thereunder, is substantially different from one where the property is brought in through the original equity power

of the court, whether with or without the defendant's consent.

In quite similar circumstances the Supreme Court said, in United States v. Butterworth-Judson Corp., 269 U. S. 504, 46 S. Ct. 179, 70 L. Ed. 380:

"Respondent's answer admitting the allegations of the complaint and its consent to the court's order constituted a necessary step in the proceedings for the appointment of receivers. * * * So, with the consent and co-operation of the insolvent debtor, the possession and control of all its property were handed over to be administered by the court through the receivers for the benefit of those whom the court found entitled to it. Porter v. Sabin, 149 U. S. 473, 479 [13 S. Ct. 1008, 37 L. Ed. 815]. To induce the action taken by the court, the complaint represented that, if respondent's property was not dealt with as a trust fund for the payment of creditors, they would suffer great loss. It is established that, when a court of equity takes into its possession the assets of an insolvent corporation, it will administer them on the theory that in equity they belong to the creditors and shareholders rather than to the corporation itself. * * * Here, the fund being less than the debts, the creditors are entitled to have all of it distributed among them according to their rights and priorities.

"Taken in connection with its insolvency, now conceded, respondent's answer admitting the allegations of the complaint and its consent to the decree appointing receivers amounted to the handing over of all its property and business to the receivers to be administered, under the direction of the court, as a trust fund to pay respondent's debts."

There, as in this case, the original bill did not charge insolvency, but this fact subsequently here, as there, appeared. In the petition to sell the assets the insolvency of this corporation was alleged, and the court in its decree found it to be insolvent, a finding not here controverted.

The manifest lack of the court's jurisdiction to entertain the bill to appoint receivers without appellant's consent, together with appellant's unqualified consent to the appointment of receivers and the granting of all relief prayed in the bill, and the voluntary turning over to the receiver of all the corporate property for its full and complete administration by the receiver, for the benefit of all creditors, and for any and all action of the court with respect to it, in our judgment constituted this property a trust fund in the fullest sense of that term, whereunder any sale or disposition by the trustee would as fully and effectually convey any and all interest of the corporation therein as though it were done through the most solemn and unreserved conveyance.

The equity of redemption was property; and by this voluntary consent to the general administration of all its property, and the turning over of all of it to the receiver, to whose authority the defendant's consent was indispensable, the defendant in the action conveyed this as well as all its other property, and the court could then direct its disposition with the other property conveyed. The receiver thus became the trustee of all the corporate property for the benefit of all creditors, authorized by the corporation to administer fully all of it, to the extent of absolute disposition of any or all of it.

That this was the intent of appellant in the full consent it gave to all the proceedings (save only to so much of the petition to sell as asked the sale to be made without redemption) finds corroboration in the condition of the corporate affairs, as appears from the bill of complaint and the other pleadings filed from time to time during the pendency of the cause, and the evidence given.

Appellant places much reliance on the decision in Locey Coal Mines v. Chicago, Wilmington & Vermillion Coal Co., 131 Ill. 9, 22 N. E. 503, 8 L. R. A. 598. Many facts are there present strikingly similar to those of this case. There was a receivership of coal mining property under a creditors' bill; receiver's certificates were authorized and issued for a considerable sum; there were mortgages on the property; and a sale was ordered by the court free of redemption. The Illinois Supreme Court held it was error in the decree to cut off the statutory right of redemption.

But in that case the action was by a judgment creditor, to remove certain obstacles to the realization of his judgment, and the decree ordered them removed and the property sold to pay the judgment. While it appeared that the defendant there consented to the order appointing a receiver, and to the conveyance of the corporate property to the receiver, the court said that by this consent the defendant parted with nothing that could not have been compelled by the court, and that the possession and control which the receiver thereby obtained was not different from what it would have been if secured without the consent. The cause was one in which the court had original jurisdiction, being a creditors' bill brought upon a judgment at law; whereas here the court was powerless without consent of appellant. It does not appear that

there was any answer to the bill in that case, nor any consent to the marshaling of assets, or to the conveyance of the property in trust for the payment of creditors, or to the sale and conversion of the property and its distribution, as in the case at bar. The court held, in effect, that where the judgment under which property might have been seized and sold on execution was enforced in chancery through the medium of a creditors' bill filed for that purpose, and the sale of the property made through chancery, the right of redemption could not be denied.

In the case of Blair v. Illinois Steel Co., 159 Ill. 350, 42 N. E. 895, 31 L. R. A. 269, there was what appeared to be a creditors' bill, brought by creditors having unsatisfied judgments, to administer the assets of an alleged insolvent corporation and to distribute them among the creditors, and for dissolving the corporation and winding up its business. The lower court ordered the assets (including real estate) to be sold without redemption, and the Supreme Court held that in such a proceeding the Locey case does not control, saying: "The sale there [In re Locey] involved was one ordered in a decree rendered upon a creditor's bill to enforce the collection of a judgment at law, and it was considered that the decree was one 'for the payment of money.' * * * Here there was no decree of foreclosure and sale under the trust deed. * * * The decree for the sale of the real estate * * * to be made by the receiver without redemption, was manifestly based upon the winding-up bill and the statute that provides for the dissolution and winding up of insolvent corporations. We think that the statute upon which the decision in Locey Coal Mines v. Coal Co., supra, was based, has no application to the matter of a decree for the sale of real estate ordered to be made by the receiver in a suit in equity brought under our winding-up statute for the purpose of dissolving an insolvent corporation and closing up its business and affairs."

We think the proceeding here is more nearly analogous to that in the Blair case. While not technically a "winding-up" proceeding under the Illinois statutes, it discloses all the elements of it up to the point of dissolution of the corporation. It was brought for an administration of all the assets of the corporation, their conversion and distribution among the creditors, and to do substantially everything that is done in a winding-up proceeding, save only dissolving the corporation itself. We see no good reason why, as respects the right of the court to cut off the redemption, the rule of the Blair Case should not here apply. The proceeding here is distinctly not one by a judgment creditor to remove obstacles in the way of realizing his judgment on execution, and then selling, through decree, the property subject to payment of the judgment. This proceeding is far broader in its aspect—it sought plenary administration, conversion, and distribution of all the property as a trust fund, and the defendant having thereunto fully consented, we do not think it can properly complain of the decree of the court providing for the sale of the defendant's every interest of the property, including redemption.

In this discussion we have not given consideration to the fact that the property sold was primarily to pay the outstanding receiver's certificates of over half a million dollars. Whether the fact that the property is ordered sold primarily to pay such obligation will of itself justify the sale unincumbered by right of redemption, we need not decide. Neither was this fact discussed in the opinion in the Locey case, where such certificates were likewise outstanding.

Satisfied as we are that Blair v. Illinois Steel Co., supra, is here applicable, we hold there was no error in decreeing sale of the property free of right of redemption, and in confirming the sale so made.

It is contended there was error in not requiring the submission of a plan of reorganization of the corporation, wherein all interests might be given due consideration. Where property is bid in pursuant to a plan of reorganization, courts have undertaken to exercise a degree of supervision, to see to it that the various interests are fairly recognized so far as equitably may be. Such a matter would be cognizable after the sale and before its confirmation if the successful bid was made pursuant to a plan of reorganization, upon objection to confirmation. No objection to the confirmation of the sale here appears, nor does it appear there was any plan of reorganization submitted or adopted during the two years of the pendency of the receivership. True it is that the sum at which the property was struck off—$607,202.70 plus accrued interest of $8,810.83 and interest on the larger sum to the time of the transfer, and subject to taxes—is startlingly small when compared with the large amount of property sold, property which theretofore evidently was deemed security for bonds and notes to the amount of $5,821,000. But, as stated, no objection to confirmation of the same was made, gross inadequacy of

sale price was not suggested, and no such question is before us.

It does appear that the successful bidder was a representative of the note and bond holders' committees; but whatever, if any, arrangement there was between these interests for taking over the property sold nowhere appears; and there was no undertaking to show it—much less to make it appear that the successful bid was pursuant to a reorganization plan which was unfair to appellant. If the action of the two mortgage interests was such as to merge or cancel the entire unrealized mortgage debt, this would in effect, although not in form, increase the sum bid by so much of the mortgage debt as on the face of these proceedings appears to remain unsatisfied. Such question might perhaps arise if and when the mortgagees sought deficiency decrees against appellant, but is not now before us.

We have no alternative but to affirm the decree of sale, as well as the order of its confirmation.

Affirmed.