## HATCH v. MOROSCO HOLDING CO., Inc.
### No. 6.

Circuit Court of Appeals, Second Circuit.
Dec. 5, 1932.

See, also, 34 F.(2d) 579; 50 F.(2d) 138.

Ernst, Gale & Bernays, of New York City (Henry Gale and George G. Ernst, both of New York City, of counsel), for receiver-appellant.

George Z. Medalie, U. S. Atty., Samuel C. Coleman, Harry G. Herman, and Frank Chambers, Asst. U. S. Attys., all of New York City (Albert T. Clark, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for the United States.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

If the government is entitled to priority in the payment of its claim for taxes, it must be solely because of the provisions of section 3466, R. S. (31 USCA § 191). Price v. United States, 269 U. S. 492, 46 S. Ct. 180, 182, 70 L. Ed. 373; United States v. State Bank of North Carolina, 6 Pet. 29, 8 L. Ed. 308. That section reads as follows:

"*Priority established.* Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The statute applies to taxes, since they are embraced within the term "debts." Price v. United States, supra.

Had the holding company been insolvent at the time the receiver was appointed in the sense of insolvency as used in section 3466, R. S. (see United States v. Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 298, 67 L. Ed. 638), the government would certainly have been entitled to priority (United States v. Butterworth-Judson Corporation, 269 U. S. 504, 46 S. Ct. 179, 70 L. Ed. 380). As the holding company was not so insolvent at that time, it remains to be seen whether the government was entitled to priority when it did become insolvent in the sense of section 3466 during the receivership and some six years after the receiver was appointed.

At the outset, it should be noticed that in Price v. United States, supra, insolvency at the time the receiver was appointed was not shown, but it did appear that the corporation was in a failing condition and within a short time was insolvent. It was held that the government was entitled to priority in payment of its taxes. But in this case neither a failing condition at the time of the appointment nor actual insolvency within a short time has been proved, and the problem, in a word, is whether the Price Case is, accordingly, to be distinguished from this.

In United States v. Oklahoma, supra, a bank had been taken over by a state bank examiner, and it became necessary to decide whether the United States was entitled to priority in payment of an Indian deposit over claims of the state under its lien law. In discussing whether the state's lien, and when the priority, if any, of the United States, attached, it was said that, "if priority in favor of the United States attaches at all, it takes effect immediately upon the taking over of the bank." The appellant earnestly urges us to accept this as foreclosing any right of the government to priority in this case since, if the only time priority could attach was when the receiver was appointed, there can be no priority for there was then no insolvency. We do not think, however, that the quotation from the Oklahoma case should be given such a broad meaning apart from its relation to the situation in which it was used. Cohens v. Virginia, 6 Wheat. 264, 399, 5 L. Ed. 257. The question then being discussed was whether the state could have obtained a lien under its law before the priority, if any, of the government attached, and what was said, we think, merely meant that, if the government, upon the facts proved in that case had any right to priority at all, its priority attached before the state lien could come into effect. As the state lien could not come into being until the examiner took possession of the bank and any priority of the United States would attach at the same time, it was pointed out that the priority of the government could not be impaired or taken away by state law. The guarded expression, as to whether there was any priority at all was due to a failure to show any insolvency at any time within the meaning of section 3466, and on that ground it was held that there was no priority.

In County of Spokane, Wash., v. United States, 279 U. S. 80, 49 S. Ct. 321, 73 L. Ed. 621, the corporation was insolvent at the time the receiver was appointed, and we do not understand there was any doubt of its insolvency being the kind required to make section 3466 applicable. The receiver was appointed in 1922. The taxes and penalties due the government were assessed in 1923, and, in considering whether there was priority over assessments in 1924 by counties upon property in the hands of the receiver, the case of United States v. Oklahoma, supra, was mentioned as authority to the effect that in a case like the one then being decided priority attached when the receiver was appointed. We take this to mean that, when insolvency is shown as of the time the re-

ceiver is appointed, priority will then take effect, but cannot believe that it is any indication that it will never come into being unless all requisite conditions are present at the time the receiver is appointed; for in the same opinion it is held that priority did attach "on or before" the taxes and penalties were assessed, and that, as should be noticed, was in the year following the appointment of the receiver.

In United States v. Hooe et al., 3 Cranch, 73, 90, 2 L. Ed. 370, the question was whether a deed was fraudulent as to creditors, and one point made in the case was that it could be avoided on the ground that the government was entitled to priority because the maker of the deed, one Fitzgerald, was insolvent when it was made. In speaking of the evidence relied upon to prove the maker insolvent at that time, the court said: "It must appear that at the time of making the conveyance, Fitzgerald was 'a debtor not having sufficient property to pay all his debts.'" This, too, can hardly be said to have a wider application than the facts in that case could give it, for, if there were proof of insolvency, it went to the time of the conveyance, and the court apparently was considering only the effect of that. Under the rule of construction already alluded to, we believe the statement should be taken to mean no more.

It has long been understood that this statute is to be given a liberal construction to effectuate the intention of Congress to aid the government in the collection of debts due it. United States v. State Bank of North Carolina, supra; Bramwell v. United States Fidelity & Guaranty Co., 269 U. S. 483, 46 S. Ct. 176, 70 L. Ed. 368; Price v. United States, supra. While this does not mean that it covers anything which does not fall fairly and reasonably within its reach, we think it should be, and that no previous decision forbids its being construed to apply to debts owed the government by a debtor in receivership who becomes insolvent after the receiver is appointed if the statute would have been applicable had the debtor been insolvent at the time the receiver was appointed. It is true that the statute speaks of insolvency in connection with the acts which have been held necessary as manifestations (see Prince v. Bartlett, 8 Cranch. 431, 3 L. Ed. 614; Conard v. Nicoll, 4 Pet. 291, 7 L. Ed. 862; Beaston v. Farmers' Bank of Delaware, 12 Pet. 102, 9 L. Ed. 1017; United States v. McLellan, Fed. Cas. No. 15,698; Strain v. United States Fidelity & Guaranty Co. (C. C. A.) 292 F. 694) as of the present and with-

out more that would, perhaps, compel the conclusion that only when the required manifestation and actual insolvency coexist as soon as the manifestation occurs does the priority take effect. But when one of the modes of releasing the condition which the explanatory clause of the statute makes upon the application of the first clause has been proved, and such a receivership as we have here is the equivalent of one of them, it falls fairly within the realm of reasonable construction to decide whether that is enough without contemporaneous insolvency to permit the first clause of the statute to be given effect whenever the government's debtor is shown to be insolvent. That clause provides that "Whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied"; and its coverage whenever it applies is as comprehensive as the words used. It too speaks in the present, and that present looks to the time of insolvency.

We take Price v. United States, supra, to be a strong indication that the government is entitled to priority in a situation like that now before us. There insolvency and the appointment of the receiver were not coetaneous. Accordingly, that cannot be an absolute condition precedent upon the priority given the government in the first clause of the statute. Nor does it seem reasonable to believe that the amount of elapsed time between the appointment of a receiver and the date of insolvency can be decisive. If insolvency proved to exist for the first time shortly after the receiver is appointed is enough, it would seem to follow as of course that proof of insolvency at any time during the receiver's administration would have like effect, for every reason for granting a preference to the government in the one instance would apply to the other. Certainly, this would be so unless the "short time" in the Price Case is taken only to have some evidential force to show actual insolvency at the time that receiver was appointed. We find no basis in the opinion for that, and can perceive no reason why it could be so. On the contrary, it was there said that, "When the assets turned out to be less than the debts, the creditors were entitled to have them dealt with as a trust fund and distributed among them according to their rights and priorities. Under the statute, claims of the United States must first be satisfied. Bramwell v. United States Fidelity & Guaranty Co., 269 U. S. 483, 46 S. Ct. 176, 70 L. Ed. 368, and United States v. Butterworth-Judson Corporation, 269 U. S. 504, 46 S. Ct. 179, 70 L. Ed. 380."

"When the assets turned out to be less than the debts" is an expression which we take to mean when insolvency was proved to exist, and so hold that the government is here entitled to priority.

As the claim of the government, now granted priority, has already been allowed with interest, Hatch v. Morosco Holding Co. (C. C. A.) 50 F.(2d) 138, the question of interest is no longer open, Thompson, Adm'x, et al. v. Maxwell Land-Grant & Railway Co. et al., 168 U. S. 451, 456, 18 S. Ct. 121, 42 L. Ed. 539.

Affirmed.