## STUART v. BLOCH *et al.*

No. 2930.  Opinion Filed July 22, 1913.

Rehearing Denied November 4, 1913.

(135 Pac. 1147.)

1. **ASSIGNMENTS FOR BENEFIT OF CREDITORS—What Constitutes.** The test as to whether an instrument is an assignment for the benefit of creditors is whether the party executing it made an absolute appropriation of his property for the purpose of paying his debts, without reserving to himself in good faith an equity of redemption in the property mentioned in the instrument.

2. **SAME—Effect of Defeasance Clause.** The fact that an instrument conveying property to a trustee for the benefit of creditors contains a defeasance clause is not conclusive evidence that it is a mortgage rather than an assignment for the benefit of creditors.

3. **SAME—Case.** An instrument executed by an insolvent debtor which conveyed all his property appertaining to the business to a trustee, and which recited that he was indebted to various persons, a list of whom was attached to the instrument as Schedule A, and which provided that the trustee should take immediate possession and sell the property at retail at any price deemed expedient, and collect or compromise any debts due the insolvent, and that if the amounts due the creditors were not paid within one day following the date of the instrument the trustee might sell the property at retail or in bulk at public or private sale, with or without advertising, and that he should disburse the money in payment, first, of the expenses of the trust, second, in payment of the amount due the creditors of insolvent, and which further recited that in preparing Schedule A it was intended to state the exact amount due each creditor, but that if any mistake had been made the trustee was authorized to make a proper correction by deducting from or adding to the amount named in the schedule, and that if any creditor was omitted the trustee was authorized to add the same to Schedule A, and that in ascertaining such facts the trustee might require verified statements of the accounts— was an assignment for the benefit of creditors, and not a mortgage, although it provided that if the amounts due to said creditors were paid on or before the day next following its execution it should be void, where the evidence showed that the trustee was elected at a meeting of the creditors, and that the debtor surrendered the possession to the trustee at the time the instrument was executed, and where the circumstances showed that he did not in good faith intend to pay the debts before default, as stipulated in the instrument.

(Syllabus by Rosser, C.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by Abe Bloch and another, doing business as the Ohio Pottery & Glass Company, against I. O. Stuart. Judgment for plaintiffs, and defendant brings error. Affirmed.

*John H. Mosier* and *Rush Greenslade,* for plaintiff in error.

*Homer Baughman,* for defendants in error.

Opinion by ROSSER, C.   Ran Lee was engaged in business at Ft. Gibson, and, becoming financially embarrassed, his creditors had a meeting to devise ways and means for collecting their debts. They selected the defendant, I. O. Stuart, as trustee, under an instrument hereinafter set out, to take charge of his business. The defendant went into possession the same day that the instrument was executed, and afterward sold the property. He did not file the instrument with the register of deeds, nor execute or file any bond as assignee, and, in fact, made no effort to comply with the statutes of Oklahoma with reference to assignments for the benefit of creditors. The instrument under which he proceeded is as follows:

"CREDITOR'S TRUST DEED.

"Know all men by these presents: That Lee Hardware Co., a corporation, of Ft. Gibson, Oklahoma, party of the first part, has this day bargained, sold and delivered, and does hereby bargain, sell and deliver to I. O. Stuart (hereinafter referred to as trustee) the following goods, chattels and property, to wit:

"First.   All of the stock of general merchandise now owned by the said first party, situated and contained in the store buildings now occupied by first party in the town of Ft. Gibson, Oklahoma, including all of said merchandise of every kind and description, such said stock consisting of tinware, hardware, machinery, implements, vehicles and other articles of merchandise.

"Second.   All the store and warehouse fixtures, tools and appliances of trade now and heretofore used by the said first party, in the above named business in said town.

"Third.   All the indebtedness of every kind and nature due and owing to the said first party whether evidenced by notes,

accounts, or otherwise, and all the notes owned by the said first party, and books of account containing same.

"Fourth. Any and all merchandise, goods and chattels in connection with said business whether in or out of the store buildings above described belonging to said first party.

"To have and to hold the same forever, but in trust for the following purposes, and upon the following conditions, to wit: Whereas, the said first party (hereinafter referred to as debtor) is indebted to the several persons, firms and corporations (hereinafter referred to as creditors) whose names, post office address and the respective amounts due each is shown by Schedule A hereto attached and made a part hereof. Now, therefore, if said debtor shall, on or before the 12 day of November, 1909, pay or cause to be paid the several amounts so due to said creditors, respectively, and each and every part thereof, then this instrument shall be void; otherwise to remain in full force and effect.

"In the meantime said trustee shall take immediate possession of the property hereinbefore described, and may during said period, sell all or any part of said property at retail for such prices as he may deem expedient, and may, by himself or through his attorney, collect such of said notes and accounts as may come into his possession, and if, in his judgment it is deemed necessary, may compromise any one or more of said accounts on terms that he may deem to the best interest of all parties in interest, and extend the time of payment thereof, if deemed advisable. In case of default of said payment to said creditors of said indebtedness, or any part thereof, at the time above mentioned, then said trustee may sell said property at retail, or in bulk, at public or at private sale, with or without advertising, as he may deem to the best interest of all concerned.

"The moneys so to be received by said trustee from sales and collections as aforesaid shall be by him paid out and distributed as follows

"First. In payment of the necessary expense of the execution and administration of this trust, including any necessary rents, insurance, light, fuel, clerk hire, attorney's fees, and all other necessary expense, and for such new goods, wares and merchandise as it may be necessary to purchase from time to time to effectually sell and dispose of such property at such advantage.

"Second. A reasonable compensation to said trustee for his services in the execution of this trust hereby created.

"Third. From the moneys then remaining in his hands, said trustee shall pay to each of the creditors named in Schedule A, the amounts due to them, respectively, as therein set forth, save and except as hereinafter mentioned, and if the money so remaining shall not be sufficient to pay each of said creditors in full, then said trustee shall pay said creditors *pro rata* in proportion that the amount due to each bears to the whole amount due said creditors. If, after payment to said creditors and costs of administration, any surplus shall remain in the hands of said trustee, he shall pay the same to said debtor, his successors or assigns, or, if any of said property then remains unsold, it shall be redelivered to said debtor.

"In preparing said Schedule A it is intended to state the exact amount due to each creditor therein named, but if any error or mistake has been made therein, said trustee is hereby authorized, upon ascertaining the true facts, to make such correction by deducting from or adding to the amounts named therein so as to make Schedule A conform to the truth, and if it should be found that any creditor is omitted, said trustee is authorized, upon being satisfied as to the amount due said creditor to add the same to Schedule A, and in ascertaining such facts, said trustee may require verified statements of account or such other legal evidence as shall seem to him necessary in order to properly arrive at the truth, and the distribution hereinbefore provided for shall be made in accordance with such schedule when so corrected.

"In witness whereof, the said party of the first part has, on this 11 day of Nov. 1909, signed, executed and delivered this instrument for the purposes therein mentioned.

"LEE HARDWARE COMPANY,

"By RAN LEE, Pres. & Manager.

"Signed and delivered in the presence of

"V. L. HURT,

"ELMER COON."

Then follows a list of the creditors with the amounts due each. The list contains nearly 50 names.

The question involved is whether or not the instrument was an assignment for the benefit of creditors, or a chattel mortgage. If a chattel mortgage the plaintiff fails; if an assignment for the benefit of creditors, the trustee's acts under it were illegal, because he failed to comply with the statutes with reference to as-

signments, and the attachment and garnishment must be sustained.

The test as to whether or not an instrument is an assignment is whether the party executing it made an absolute appropriation of property as a means of raising a fund to pay debts, "without reserving to himself, in good faith, an equity of redemption in the property conveyed." *Appolos v. Brady,* 4 U. S. App. 209, 49 Fed. 401, 1 C. C. A. 299.

In *Robson v. Tomlinton,* 54 Ark. 229, 15 S. W. 456, the court said:

"The controlling guide * * * is, 'Was it the intention of the parties, at the time the instrument was executed, to divest the debtor of the title and so make an appropriation of the property to raise a fund to pay debts?"

See, also, *Kohn v. Clement,* 58 Iowa, 593, 12 N. W. 550.

In *Richmond v. Mississippi Mills,* 52 Ark. 31, 11 S. W. 960, 4 L. R. A. 413, it was held that an instrument, in form a mortgage, might constitute an assignment by reason of the intention of the parties and the operation of the instrument. It was held in *Box v. Goodbar,* 54 Ark. 6, 14 S. W. 925, and *Penzel Co. v. Jett,* 54 Ark. 428, 16 S. W. 120, that the fact that the instrument contained a defeasance clause was not conclusive evidence that it was a mortgage rather than an assignment. See, also, *Winner v. Hoyt,* 66 Wis. 227, 28 N. W. 380, 57 Am. Rep. 257.

In the case of *White v. Cotzhausen,* 129 U. S. 329, 9 Sup. Ct. 309, 32 L. Ed. 677, Mr. Justice Harlan, holding certain instruments, mortgages in form, to be assignments, said:

"Surely, the mere name of the particular instruments by which the illegal result is reached ought not be permitted to stand in the way of giving relief contemplated by the statute. Courts of equity are not to be misled by mere devices, nor baffled by mere forms."

The statutes of Dakota regulating assignments, in force at the time of the decision in the case of *Straw v. Jenks,* 6 Dak. 414, 43 N. W. 941, were exactly the same as the statutes of Oklahoma upon the same subject. In that case certain instruments,

chattel mortgages in form, were given to certain creditors of the partnership.  The court said:

"The purpose of the section of the Compiled Laws before quoted is manifest.  * * *  Insolvent debtors must not be permitted to evade its provisions merely by adopting the forms of other legal instruments, whether judgment by confession or mortgages, or by calling the instrument by which the transfer of all his property is effected to creditors of his choice, to the exclusion of others of them, something—anything—less or different than an assignment.  Under this statute, whenever an insolvent debtor makes a general disposition of all his property. and effects, whether to all or to only a part of his creditors, thereby abandoning his business, or putting himself in such a situation that it is impossible for him to continue in it, he has made a voluntary assignment; and this, whether the instrument by which the operation is effected be by means of an instrument usually denominated an 'assignment,' or by mortgage or confession of judgment, or by several or either or both.  So long as the instrument employed by the debtor, whatever it be called, works an absolute transfer of substantially all the property and effects of the insolvent from him to another or others, with a design on his part that it shall do so, and that his connection with the business shall cease, it is a voluntary assignment on his part, under the statute in question.  *Harkrader v. Leiby,* 4 Ohio St. 602."

It appears from the evidence in this case that Lee was insolvent, and his creditors met and elected a trustee, and the instrument set out above was executed.  It provided for the payment of a large sum of money on the following day.  It provided, not only for the creditors named, but also provided that it was a security for any other creditors who might have valid claims, whether listed in the schedule or not.  That was a clear indication that the trustee was appointed for the purpose of winding up and adjusting Lee's business.  Certainly persons could not be paid the following day, if the amounts due them were not known.  Not only that, but the instrument clearly implies that the exact amount due each creditor was not known, and had to be adjusted between the trustee and the creditors.  Of course, a mortgage could be given for an indebtedness the exact amount of which was unknown, yet ordinarily people giving mortgages

know the exact amount to stipulate, and certainly mortgages are given to known persons, and are not ordinarily given to unknown persons. A mortgage is usually given to secure an indebtedness the amount of which is known, and the beneficiaries of the mortgage are known. Under this instrument, if there had been other creditors whose names were not listed, they would have been compelled to take under the instrument, or else to see the whole mercantile business applied to the payment of other creditors. The instrument provided that the trustee should take immediate possession, and he was given the right to sell the property, either by public or private sale. There is no evidence that the trustee complied with the Oklahoma statutes with reference to appraisements before selling the property, as required in cases of mortgages. Lee abandoned the property. He undoubtedly made no effort to pay the debts before the so-called mortgage was due, and had no intention of doing so at the time it was executed. The instrument has all the earmarks of an assignment, except that there is a formal defeasance which no one ever believed would be invoked. If such a device as this can be held a mortgage, then the statutes of Oklahoma, which attempt to surround the making of an assignment with such formalities and restrictions as will secure the honest and proper administration of the estate of an insolvent, are nugatory and fall far short of remedying the evil which was supposed to exist in the administration of common-law assignments.

The judgment should be affirmed.

By the Court: It is so ordered.