### In re SAXER.

District Court, E. D. Michigan, S. D. February 14, 1929.

No. 8789.

Fixel & Fixel, of Detroit, Mich., for creditors.

Joseph B. Beckenstein, of Detroit, Mich., for bankrupt.

SIMONS, District Judge. This controversy was submitted to the District Court sitting in bankruptcy without a jury, and presents the question whether the execution and delivery of a certain trust instrument by the alleged bankrupt constitutes an act of bankruptcy, in (a) that it is a general assignment for the benefit of creditors, or (b) that the effect of it is to hinder, delay, and defraud creditors. While other acts of bankruptcy are charged in the petition, no proof is presented of the insolvency of the alleged bankrupt, and the petitioners rely upon the acts of bankruptcy claimed to have been committed by the execution of the said trust agreement.

On March 22, 1928, within four months prior to the filing of the petition, the respondent, Joseph Saxer, and his wife, conveyed to three trustees certain improved real estate, together with all of the personal property thereon owned by the grantors. The proofs tend to show that the property so conveyed to the trustees constituted substantially all of the assets owned by Saxer, and petitioners' contention on this point is not seriously challenged either by proof or argument. The grant to the trustees is absolute in form, and includes covenants of title, possession, and against incumbrances common to conveyances of real estate in Michigan. The trustees' powers are to hold, control, manage, and operate the property for the benefit of all of the parties to the agreement, to make disbursements for the preservation and protection thereof, to make leases, to refinance any of the existing mortgages upon the property, and to bring about a sale of any or all parcels for a fair market price, subject to the limitation that notice of proposed sale must be given to the grantors, and if they reject the proposed sale, two arbitrators shall be appointed by the trustees, two

by the grantors, and a fifth arbitrator shall be selected by the arbitrators so appointed; the five arbitrators to determine whether the sale is at a fair market price, and the decision of any three of them to be binding and final upon all the parties. The trust agreement is to expire at the end of eighteen months from its date; the income of the properties is to be applied first to the payment of necessary operating expenses, plus installments of principal and interest on mortgages, second to installments due on title retaining contracts or chattel mortgages on furniture or equipment, and third to pro rata distribution to creditors. The proceeds of sale are to be applied to payment pro rata of creditors' claims listed in schedules attached to the instrument, and the balance is to be paid to Joseph Saxer, grantor.

The purpose of the instrument, as gathered from its terms and the preamble accompanying it, was undoubtedly to obtain an extension from creditors, and to secure assenting creditors in their claims without actually making a general assignment for the benefit of all creditors. Whether this was accomplished is the first pertinent inquiry. In the main, the instrument answers all the tests that have been applied in order to determine whether a given instrument is a general assignment within the statute. It is a grant to trustees, absolute on its face; it contains no defeasance clause; it is for the benefit of creditors; it conveys substantially all of the assets of the alleged bankrupt; it contains power to sell and convey property, and to distribute proceeds among creditors. The instrument is a general assignment within the purview of the statute, unless its character as such is destroyed by (1) the limitation of the trust agreement in point of time, (2) the veto power on the sale reserved to the grantor, (3) the fact that it is for the benefit of assenting creditors only, and not of all creditors.

■ It would seem to be elementary that the character of a general assignment is not in any way affected by conditions imposed upon the execution of the trust, designed to safeguard, facilitate, or to speed its execution. In examining the provisions defining the powers and rights of the trustees to sell the properties conveyed to them in the instant case, a consideration of the reservation made by the grantor leads to the conclusion that during the period of the trust the grantor has divested himself of all control over the property and its disposition. Power is given to the trustees to sell any or all of the parcels for a *fair market price*. This but expresses in the instrument an obligation of the trustees which from its very nature is theirs even if not so expressed. Certainly the trustees would in the exercise of the trust reposed in them be obliged to obtain for the property if sold the best price that at any given time could be procured under all of the circumstances. The veto power reserved by the grantor is not a veto power over the sale of the property, but merely a method provided for testing the fairness of the market price of any proposed sale. Provision is made, in the event of disagreement between the trustees and the grantor over the fairness of the market price at which the property is proposed to be sold, for submission of the controversy to a board of arbitrators; the approval of a majority of the board being final and binding upon all of the parties. The trustees in obtaining a fair market price for the properties have the power to sell regardless of the protest and in defiance of the wishes of the grantor; it being assumed, of course, that if a fair market price is obtained, the fact finding determination of the arbitrators must approve of it. In Moore v. Yampa Mercantile Co., 287 F. 630, the Court of Appeals of the Eighth Circuit defined a general assignment as one which does not prevent the actual appropriation of the assignor's property for the benefit of his creditors. Measured by this test, there is nothing in the instrument or in the reservation made by the grantors that would prevent, or enable Saxer to prevent, the appropriation of his property for his creditors' benefit.

■ With regard to the third point raised, to distinguish this instrument from a general assignment, it has been held that it is not essential that all the creditors accept the terms imposed by the instrument if it appears on its face to have been a disposition of all of the property of the assignor for the benefit of his creditors. 1 Collier on Bankruptcy, 162; In re Courtenay Mercantile Co. (D. C.) 186 F. 352; Griffin v. Dutton (C. C. A.) 165 F. 626.

Having concluded that the trust instrument herein referred to is a general assignment for the benefit of creditors, its execution and delivery constituted an act of bankruptcy, and it is not necessary to discuss other acts of bankruptcy set forth in the petition. An order may be entered adjudicating the respondent a bankrupt.