**In re MAINE STATE RACEWAYS**

Bankr. No. 23467.

United States District Court,
D. Maine, S. D.

June 11, 1951.

Adrian A. Cote, Lewiston, Me., for petitioner.

Mayo S. Levenson, Wilfred A. Hay, and Forrest E. Richardson, all of Portland, Me., for respondent.

CLIFFORD, District Judge.

This matter comes before this Court on the petition of Robert Bosse, Ernest C. Wilkins, and Hall & Knight Hardware Company, petitioning creditors in involuntary bankruptcy, for review of two orders of the Referee in Bankruptcy, both dated March 17, 1951.

The first order complained of relates to the denial by the Referee of the motion made by petitioners for a summary judgment declaring Maine State Raceways a bankrupt.

The second order complained of relates to the granting by the Referee of the motion made by Maine State Raceways for a summary judgment declaring that the so-called Trust Mortgage, executed by Maine State Raceways on September 7, 1950, was not a general assignment for the benefit of creditors.

Maine State Raceways, a Maine corporation, will be hereinafter referred to as Raceways.

Petitioners assert that they are aggrieved by certain allegedly erroneous rulings of the Referee, contained in those orders and in the opinion which accompanied those orders. Specifically, petitioners allege that the Referee erred, (1) in his ruling that there was a substantial question of material fact involved in the issue relating to petitioners' contention that they were creditors of Raceways; and, (2) in his ruling that there was a substantial question of material fact involved in the issue relating to petitioners' contention that the Trust mortgage herein referred to was made by Raceways with the intent to hinder, delay, or defraud creditors; and, (3) in his ruling that the Trust Mortgage, as a matter of law, was not a general assignment for the benefit of creditors; and, (4) in his ruling setting the matter down for trial and limiting the evidence to be received in the trial to the issues set out by him.

All of these questions are raised with respect to the first order complained of by petitioners, that is, the order denying petitioners' motion for summary judgment. The only point raised with respect to the second order relates to the alleged error numbered (3) above, holding that the Trust Mortgage was not a general assignment for the benefit of creditors.

It has been contended by Raceways, in its briefs, that Petitioners' motion for summary judgment, as presented to the Referee, was defective in that it did not precisely state the grounds on which summary judgment was sought. On review of the Referee's orders, this Court assumes that the issues on which the Referee ruled were properly before him for decision, unless the contrary plainly appears. From a reading of the Referee's opinion, it is clear that he considered the issues raised by petitioners' motion to be whether or not Raceways, as a matter of law, had committed the first and the fourth Acts of Bankruptcy.[1] That was a reasonable

1. The first Act of Bankruptcy consists of having conveyed, transferred, concealed, removed or permitted to be concealed or removed any part of one's property, with intent to hinder, delay or defraud one's creditors or any of them.

The fourth Act of Bankruptcy consists of having made a general assignment for the benefit of creditors. Bankruptcy Act of 1898, section 3, as amended, 11 U.S.C.A. § 21.

construction of petitioners' motion, and the supporting affidavits and exhibits. In overlooking possible technical objections to the motion and addressing himself to the heart of the controversy apparently raised by the motion, the Referee acted in the liberal spirit of the Federal Rules of Civil Procedure 28 U.S.C.A. This Court will likewise overlook any technical defects of pleading, since it can do so without prejudice to any party to the proceeding.

■ The order of the Referee is interlocutory, insofar as it refuses to grant summary judgment on the ground that the pleadings and affidavits present substantial questions of material fact requiring hearing on the merits. No right of petitioners has been foreclosed. After hearing, on the merits, petitioners may still prevail on those questions. If they do not prevail, they still have the right to seek review from this Court. In re Schimmel, D.C.E.D.Pa.1913, 203 F. 181; See In re Prindible, 3 Cir., 1940, 115 F.2d 21, 22.

■ The third allegation of error relates to the ruling of the Referee that, as a matter of law, the Trust Mortgage was not a general assignment for the benefit of creditors. That ruling was a final determination of that issue. As a result of that ruling, petitioners and all other creditors are foreclosed from hereafter asserting, before the Referee, that Raceways committed the fourth Act of Bankruptcy. This issue is properly before the Court for review at this time.

The interpretation of the so-called Trust Mortgage has given this Court much concern. As the Referee correctly stated in his opinion, the Trust mortgage, was a transfer, of all the real property and the tangible personal property of Raceways, to Trustees for the benefit of the creditors of Raceways. It is also apparent that the Trustees were given power to liquidate the assets of Raceways, if, in their judgment, that course of action should be for the best interests of the creditors.

But liquidation was not the real purpose of the conveyance. The conveyance contemplated that the Trustees might effectuate a composition of the debts, or a reorganization of the corporation. In either of those events there would be no liquidation, the property would revert to Raceways, and the Trust Mortgage would lapse.

The real and primary purpose of the Trust Mortgage is clearly disclosed in the provision made therein for the continued use of its assets in the enterprise, by Raceways itself or by the Trustees. Persons extending credit to Raceways, in connection with the operation of the enterprise, were given priority over assenting unsecured creditors. Raceways was given authority to sell merchandise in the usual course of the operation of this enterprise. Clearly, therefore, the Trust Mortgage did not necessarily contemplate the liquidation of the assets conveyed, even though provision was made for the equitable distribution of the proceeds of sale among the assenting creditors, in the event that liquidation should occur.

Moreover, by assenting to the Trust Mortgage, a creditor did not assure to himself any immediate dividend, or even an ultimate dividend, from the sale of assets. The assenting creditor merely agreed not to interfere with the control of the assets by the Trustees, during the continuation of efforts by Raceways to work its way out of its financial difficulties. During negotiations for this purpose, the Trust Mortgage contemplated that the operations of Raceways would continue. Liquidation would come only as a last resort, if all other efforts failed. This conclusion is supported by the letter of September 11, 1950, from the Trustees addressed to the creditors and stockholders of Raceways, which petitioners have put in the record. That letter indicates clearly that the Trust Mortgage was executed as a means of protecting the creditors while at the same time permitting Raceways to continue its operations.

■ Petitioners correctly point out that the approval of stockholders is not a necessary element of an act of bankruptcy by a corporation. Royal Indemnity Co. v. American Bond Co., 1933, 289 U.S. 165, 53 S.Ct. 551, 77 L.Ed. 1100 (Considering application of Maine statute). Nevertheless, for what it may be worth, and as evidence of the intention of Raceways in ex-

ecuting the Trust Mortgage, it is to be noted that the Trust Mortgage was authorized by the stockholders of Raceways for the purpose of securing the creditors, as the record of the stockholders' meeting of July 17, 1950, demonstrates, and not for the purpose of liquidating the assets of the corporation.

With these facts in mind, a sufficient reason becomes apparent for the detailed provisions in the Trust Mortgage, relating to procedure for liquidation, should that be found necessary, and for the apportionment of the proceeds of liquidation among the creditors. Those provisions were made necessary by the fact that the mortgage was given, not to secure one debt, owed to a single mortgagee, but to secure many debts, owed to a large number of creditors. In such a situation it was obviously necessary to make careful provision for an equitable settlement of the estate, in the event that the basic purposes of the Trust Mortgage could not for any reason be successfully carried out.

After earnest consideration of the whole document, in the light of the very able and illuminating discussion of facts and law by counsel in their briefs, this Court is of the opinion that the Referee was correct in ruling that the Trust Mortgage was not a general assignment for the benefit of creditors. This Court adopts the discussion and conclusions of law with respect to this issue, contained in the Opinion of the Referee.

[8, 9] Brief notice may be made of the fourth allegation of error made by petitioners, with respect to the Referee's ruling limiting the evidence to be received at the hearing on the merits. From an examination of the pleadings, it is apparent that the issues defined by the Referee are the only issues raised by the pleadings, with the sole exception of the issue relating to the legal effect of the Trust Mortgage, discussed herein. It is the function of the Referee on motion for summary judgment to limit the issues of fact to be tried on the merits. Rule 56(d), Fed.Rules Civ.Proc. There was no abuse of his authority here.

Conclusion.

This Court is of the opinion that the allegations of error numbered (1) and (2), above, refer to rulings of the Referee which are interlocutory; and that these alleged errors are, therefore, not properly before this Court at this time; that the Trust Mortgage did not constitute a general assignment for the benefit of creditors; and that the Referee was not in error in setting the matter for trial and limiting the evidence to be received at the hearing to the issues as set out by him.

It is therefore ORDERED, ADJUDGED, and DECREED, that the Petition for Review be and hereby is denied.