**UNITED STATES of America,**
**Appellant,**

v.

**Benjamin GARGILL, Trustee, et al.,**
**Appellees.**

**No. 4874.**

United States Court of Appeals,
First Circuit.

Jan. 18, 1955.

Grant W. Wiprud, Sp. Asst. to Atty. Gen., with whom H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and A. F. Prescott, Sp. Assts. to Atty. Gen., Anthony Julian, U. S. Atty., and Francis J. Di-Mento, Asst. U. S. Atty., Boston, Mass., were on brief, for appellant.

Alfred Sigel, Boston, Mass., for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

### HARTIGAN, Circuit Judge.

This is an appeal by the United States Government from the order of the District Court of the United States for the District of Massachusetts denying the Government's petition for review of an order of a referee in bankruptcy establishing that the Government's tax lien was subordinate to the lien of certain trust mortgagees of the bankrupt. We have jurisdiction of this appeal by virtue of 30 Stat. 553 as amended, 11 U.S.C.A. § 47.

The mortgage in question was attempted to be established through a series of instruments executed on February 19, 1952. The mortgagor was Philrich Enterprises, Inc., a Massachusetts corporation engaged in the restaurant business in Newton, Massachusetts. The mortgagees were three individuals who were designated "Trustees."

The mortgage itself was essentially in the usual form except that instead of listing the particular personal property mortgaged, it contained a general all inclusive clause referring to "all the stock-in-trade, goods, wares, merchandise, supplies, furniture, furnishings, fixtures, equipment, tools, appliances, accounts receivable, and all other personal property of every kind, nature and description in or upon the premises occupied by the mortgagor at its place of business at 3 Boylston Street, Newton, Massachusetts, together with the good will, trade name of said business and any and all licenses enjoyed by the mortgagor * * *." This mortgage also attempted to secure after acquired property and allowed the mortgagor to sell the mortgaged stock-in-trade and merchandise provided they were replaced or the equivalent in funds was turned over to the mortgagees. The mortgage contained a defeasance clause conditioned upon the payment to the trustees of " * * * the sum of as stated in a note and trust agreement of even date signed by it. * * *"

The promissory note referred to in the mortgage was for $68,920.85 which amount was to be paid to the trustees in weekly installments. Each installment was to be an amount equivalent to five per cent of the gross business done by the mortgagor for the particular week prior to the date of such installment payment except that during January, February and March a payment of $100 a week would be made in lieu of the payments based on five per cent of the gross business. In no event could a weekly payment be less than $100. The note provided for payment " * * * all in or within five (5) years from this date."

Prior to the execution of the mortgage and note, the mortgagor and the three persons designated as trustees entered into a so-called "Indenture Trust Agreement", and it is this instrument which raises the principal doubt concerning the status of the trustees in this proceeding. This indenture recites that the mortgagor is unable to pay its debts and has requested its creditors to grant it time and allow it to carry on its business subject to the inspection and control of the trustees. It also recites that the creditors, who are listed in an attached Schedule A and to whom is owed an amount in excess of $69,920.85, desire

558

that the business be carried on and the good will preserved, and these creditors agree to allow the business to be carried on by the mortgagor until February 18, 1957. The trustees promise to hold the mortgaged property in trust "for the equal pro rata benefit and security of such of said unsecured creditors above described as shall have assented hereto within sixty (60) days of the date of this indenture or within such further time as may be granted by the trustees in writing." The mortgagor promises to pay the trustees in the manner provided for in the note except that instead of providing for a total payment of $69,-920.85 it provides that payments shall continue "until a sum equal to the debtor's entire present indebtedness to all unsecured creditors shall have been paid in full." The mortgagor also promises to conduct its business on a cash basis, to allow the trustees the right to inspect its books and to furnish financial statements to the trustees. Paragraph 8 of this agreement, upon which the Government strongly relies in its argument that this whole transaction is in the nature of an assignment for the benefit of creditors rather than a mortgage, provides:

"8. In addition to all other powers conferred on the Trustees elsewhere herein, the Trustees shall have the power at any time, and whether the Debtor be in default hereunder or not, to release any and all security held by them hereunder for such consideration as they in their sole judgment and discretion shall deem proper. The consideration so received shall be held by the Trustees for the benefit of the beneficiaries and the proceeds thereof shall be applied for the benefit of such beneficiaries as herein provided. The Trustee's (sic) determination to exercise this power and their exercise thereof in good faith shall not be open to question by any person beneficiary hereunder or claiming the benefits hereof."

As further security for the performance of the mortgagor's obligation under the indenture agreement, the two stockholders of the mortgagor assigned their stock as security to the trustees, giving the trustees the right upon default by the mortgagor to sell said stock. These two stockholders presented their undated resignations as officers and directors of the mortgagor and also their powers of attorney with respect to their stock to the trustees, which instruments the trustees were authorized to date and deliver to the mortgagor corporation upon any default in the performance of the agreement.

The mortgage was duly recorded in the City Clerk's Office in Newton on February 21, 1952, and the mortgagor continued the operation of the business until the involuntary petition in bankruptcy was filed on February 16, 1953.

The Government's claim to a lien arises out of certain federal taxes which were listed on an assessment list received in December 1951, two months before the mortgage in question was executed. It was not until June 24, 1952 that notice of this lien was recorded.

On April 13, 1954, the referee in bankruptcy certified that as the notice of tax lien was recorded after the recording of the mortgage, an order be entered establishing that the lien of the United States was subordinate to the payment of administration expenses and the lien of the trust mortgagees. The district court affirmed the referee's order, stating " * * * that a mortgage or pledge of any sort should be given priority over an unrecorded tax lien."

We shall first deal with the Government's contention that the district court was in error when it failed to apply the federal priority statute[1]

1. 31 U.S.C.A. § 191, R.S. § 3466.
"Priority established
"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United

which gives the Government priority for its claims in the event of a debtor's insolvency and the commission of an act of bankruptcy. The weight of authority indicates that this statute is not applicable in proceedings in bankruptcy. 4 Collier on Bankruptcy, 264 and n. 51 (14th ed. 1954); see Adams v. O'Malley, 8 Cir., 1950, 182 F.2d 925; United States v. Sampsell, 9 Cir., 1946, 153 F.2d 731; In re Knox-Powell-Stockton Co., 9 Cir., 1939, 100 F.2d 979. It cannot be assumed that Congress was so illogical and inconsistent as to enact § 64 of the Bankruptcy Act, 11 U.S.C.A. § 104, entitling the Government only to a fourth priority insofar as its tax claims are concerned and a fifth priority as to certain other debts owed to the United States, if it did not intend that § 64 supersede, insofar as bankruptcy proceedings are concerned, the first priority given to federal claims under § 3466.

The Government's main contention is that it is entitled to a tax lien under § 3670[2] of the Internal Revenue Code of 1939 and that § 3672[3] of the Code, which invalidates unrecorded tax liens as to mortgagees, is inapplicable in the instant case because the purported mortgage was in fact an attempted assignment for the benefit of creditors.

It is clear that a lien in favor of the Government was established when the assessment list was received in De-cember, 1951, demand presumably having been made upon the taxpayer. It is also incontrovertible that such a lien is not " * * * valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector * * * " in the proper office. If the three trustees named in the agreement of February 19, 1952 acquired the status of "mortgagee" because of the transaction occurring on that date and thus prior to the filing of notice of tax lien by the collector on June 24, 1952, their lien is senior to and is to be preferred over the lien of the Government.

The Government contends that Congress intended that only conventional mortgagees should come within the protection of § 3672, citing the language used in United States v. Gilbert Associates, Inc., 1953, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071. In that case the Court held that despite the fact that the New Hampshire Supreme Court had held that assessments made by taxing authorities were in the nature of judgments, the taxing municipality was not a judgment creditor within the meaning of § 3672. The Court refused to follow the state law in determining whether a taxing authority was a judgment creditor or not within § 3672 because it was apparent that there was a great lack of uniformity among the states as to the

---

States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

2. "§ 3670. *Property subject to lien*

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 3670, 53 Stat. 448.

3. "§ 3672. *Validity against mortgagees, pledgees, purchasers, and judgment creditors*

"(a) *Invalidity of lien without notice.* Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

"(1) Under State or Territorial laws. In the office in which the filing of such notice is authorized by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law authorized the filing of such notice in an office within the State or Territory; * * *." 26 U.S.C. § 3672, 53 Stat. 449 as amended.

legal status of a tax assessment, and "A cardinal principle of Congress in its tax scheme is uniformity * * *." United States v. Gilbert Associates, Inc., supra, 345 U.S. at page 364, 73 S.Ct. at page 703. While in some states, such as New Hampshire, tax assessments have the nature of judgments, in other states where taxing authorities act quasi-judicially and are considered administrative bodies, tax assessments do not have the nature of judgments. The facts in the Gilbert case and the instant case are distinguishable. Mindful of the importance of uniformity in the federal tax scheme, we are of the opinion that the sustaining of the finding of the referee in the instant case will not result in a lack of uniformity with regard to the meaning of "mortgagee" in § 3672.

There is no basis for the contention that in one state a transaction such as this would be construed as an attempted assignment for the benefit of creditors and in another state as a valid mortgage. The cases, In re Heleker Bros. Mercantile Co., D.C.D.Kan.1914, 216 F. 963; Stuart v. Bloch, 1913, 39 Okl. 556, 135 P. 1147; Penzel Company v. Jett, 1891, 54 Ark. 428, 16 S.W. 120, and Winner v. Hoyt, 1886, 66 Wis. 227, 28 N.W. 380, cited by the Government as authority for the proposition that the present transaction resulted in an assignment for the benefit of creditors are of little assistance to us. These cases involved instruments labelled "mortgages" but where the equity of redemption was a sham and where actual possession of the "mortgaged" property of the debtor was intended to be acquired immediately after execution by the purported mortgagee who within a short time thereafter would commence to liquidate the property and transfer the proceeds thereof to the debtor's creditors. Here the mortgagor remained in actual possession of the property and carried on its business for almost one year after the execution of the mortgage, and there is no evidence that this mortgage was a sham transaction intended to disguise an actual assignment for the benefit of creditors.

Because of the apparent non-existence of a conflict among the states as to the legal effect of a transaction such as that involved in the instant case, the Massachusetts decisions dealing with similar mortgages should be given considerable weight in determining whether or not the instant trustees are mortgagees under § 3672.

In Massachusetts the court is reluctant to invalidate security transactions involving instruments similar to those executed by the mortgagor here. In S. Samuels & Co. v. Charles E. Fogg Co., 1927, 258 Mass. 402, 155 N.E. 429, an insolvent debtor executed a mortgage of its property to the trustees representing the debtor's creditors. The court sustained the validity of the mortgage indicating that in the absence of a secret trust benefiting the debtor, a mortgage resulting in a preference for a particular creditor or group of creditors would be upheld, distinguishing such a mortgage from an assignment for the benefit of creditors. See Shay v. Gagne, 1931, 275 Mass. 386, 176 N.E. 200; Banca Italiana Di Sconto v. Bailey, 1927, 260 Mass. 151, 157 N.E. 40.

■ One of the principal and necessary characteristics of a mortgage is the fact that it is a security transaction. The mortgagor does not make an absolute and unequivocal conveyance of his property but retains an equity of redemption. There is nothing in this transaction which casts any substantial doubt on the possession by this mortgagor of a substantial equity of redemption. The Government argues that Paragraph 8 of the indenture agreement gives the mortgagees a power to dispose of the secured property at will, thus making the mortgagor's equity of redemption a sham extinguishable at the mortgagees' whim. With this interpretation we cannot agree although Paragraph 8 is not totally unambiguous. The mortgage grants the mortgagor the

right to dispose of mortgaged stock-in-trade and merchandise providing such property is replaced or funds equivalent in value thereto are turned over to the trustees and also implicitly allows the substitution or renewal of others articles of mortgaged property. Without expressing any opinion as to whether after acquired property or stock-in-trade can be the subject of a mortgage, there being other property conveyed as security by the present mortgagor which unquestionably can be subjected to a mortgage, a situation could conceivably arise where some of the mortgaged property is no longer of any use to the mortgagor. The mortgagor and mortgagees thereupon could agree that the property may be sold free of the mortgage and the proceeds turned over to the mortgagees in partial payment of the mortgage obligation. The present mortgagees, however, are trustees who have a fiduciary obligation to those creditors who have consented to the mortgage. Paragraph 8 is a possible, although not clearly expressed, means of allowing the trustees to release property without undergoing the threat of charges by the beneficiaries of breach of fiduciary duty. It was necessary to incorporate this provision in the indenture agreement as it was the only one of the many instruments involved in this transaction to which the creditors were parties.

Another element which supports the upholding of the mortgage status of the trustees is the retention of control over and possession of the mortgaged property by the mortgagor. This characteristic is one shared by mortgages and is not found in assignments for the benefit of creditors.

That this mortgage contemplated repayment over a period of five years and that such payments were in amounts which the mortgagor could reasonably expect to meet are features which would not be found if the mortgagor and creditors had intended that the mortgaged assets be immediately liquidated and proceeds distributed in satisfaction of the mortgagor's debts, which is the main purpose of an assignment for the benefit of creditors.

This mortgage does result in a preference as do all mortgages securing antecedent debts but this does not deprive the mortgagee of his secured position. Davis v. Schwartz, 1895, 155 U.S. 631, 15 S.Ct. 237, 39 L.Ed. 289; see Ferris v. Chic-Mint Gum Co., 1924, 14 Del.Ch. 232, 124 A. 577. That the mortgage was to secure the mortgagor's creditors does not affect its status as a mortgage. See S. Samuels & Co. v. Charles E. Fogg Co., supra; In re Pilot Radio & Tube Corporation, 1 Cir., 1934, 72 F.2d 316, certiorari denied sub nom. Eckhardt v. Ball, 293 U.S. 584, 55 S.Ct. 98, 79 L.Ed. 680.

Two recent district court cases have dealt with the problem of classifying certain instruments as mortgages or as assignments for the benefit of creditors. The transaction in In re Maine State Raceways, D.C.D.Me.1951, 97 F.Supp. 1016, has more of the characteristics of an assignment for the benefit of creditors than does the present transaction, yet the district court found that the "Trust Mortgage" involved was not a general assignment for the benefit of creditors. Smith v. United States, D.C. D.Haw.1953, 113 F.Supp. 702, presented a situation bearing a greater resemblance to that in the instant case, although involving the Government's claim for priority under 31 U.S.C.A. § 191 in a non-bankruptcy proceeding, and the district court found that as the mortgagor remained in possession and control of its business after the execution and delivery of the mortgage, the mortgage was a bona fide security transaction and not a voluntary assignment within the meaning of § 191.

We, therefore, conclude that the trustees here are mortgagees within the meaning of § 3672 and that the Government's tax lien is invalid as against them.

The order of the district court is affirmed.