Harold **WING**, Aaron Sugarman and Edgar S. Stanley

v.

**UNITED STATES** of America.

Civ. A. No. 58–1165–M–W.

United States District Court
D. Massachusetts.

June 12, 1962.

**6**

Jack H. Calechman, Herbert Baer, Boston, Mass., for plaintiff.

W. Arthur Garrity, Jr., U. S. Atty., William M. Madden, Asst. U. S. Atty., Thomas F. Field, Tax Div. Dept. of Justice, Washington, D. C., for defendant.

WYZANSKI, District Judge.

Invoking the jurisdiction conferred by 28 U.S.C. § 1346, plaintiffs bring this action against the United States for internal-revenue taxes alleged to have been erroneously collected by them.

The record is lamentably skimpy in showing the details of the taxes assessed, the collection, and various other items. But it may fairly be said that the case presents the question whether the plaintiffs were lawfully required to pay the United States from assets in their hands federal income and federal unemployment compensation taxes due from Allan's Restaurants, Inc., hereafter called the corporation.

The District Director, apparently, (though on this point the record is not clear) regarded the trustees as liable for the corporation's tax on two alternate theories: (1) that the United States had a priority claim to be paid out of property assigned to the trustees of Allan's Restaurants, Inc. while the corporation was insolvent; and (2) that the United States had a senior lien upon property transferred by the corporation to the trustees. The first theory rests on a combination of R.S. § 3466 and § 3467, 31 U.S.C.A. § 191 and § 192. It is based on the claim that the corporation being "indebted to the United States" and "not having sufficient property to pay all" its debts, made "a voluntary assignment thereof" to the plaintiffs, and that this assignment required that "the United States shall be first satisfied" out of the property so transferred [see 31 U.S.C.A. § 191]; and that if the plaintiffs did not observe that priority they would be personally answerable. [See 31 U.S.C.A. § 192]. The second theory rests on §§ 6321 and 6323(a) of the Internal Revenue Code of 1954, 26 U.S.C., 1958 ed., §§ 6321 and 6323. It is based on the claim that the District Director had against Allan's Restaurants, Inc.'s property a lien for taxes, which he filed, and that prior to that filing there was no "mortgagee" that had a lien on such property.

Upon the evidence offered, this Court makes the following findings:

1. Allan's Restaurants, Inc. is a Massachusetts corporation which began in February 1952 to operate a restaurant at 159 Tremont St., Boston. It operated at a profit of less than $700 in the period ending September 30, 1953; but it lost over $21,000 in the year ending September 30, 1954; and over $12,000 in the year ending September 30, 1955. From October 1, 1955 to December 31, 1955 it lost over $5,000. As of December 31, 1955 the corporation had assets of under

$18,000, and liabilities in excess of $50,-000. There was no sound reason to believe that, as long as it was saddled with such liabilities, the corporation's business was likely to become profitable, or that the corporation could raise new capital.

2. On January 5, 1956 the corporation executed a demand note of $60,000 to trustees to pay such of the corporation's unsecured creditors as chose to participate. To secure that note the corporation executed a "mortgage" to trustees for creditors. The trustees recorded this mortgage on January 6, 1956. It covered all the corporate assets of every kind. There was left nothing which the corporation could sell or use in order to get funds to pay principal or interest on the mortgage.

3. The history of the company showed plainly that with its bad record of losses, no investor was likely to put new funds into the enterprise subject to existing liabilities.

4. While, after the mortgage, the corporation retained a technical equity of redemption, the equity of redemption was of no economic value.

5. The corporation did continue to do business for just under a month, that is, until February 2, 1956. During that time, in accordance with the terms of the mortgage and with the consent of the trustees, the corporation used the mortgaged assets to continue to serve meals to customers. The money received from these customers was in turn used to buy new food supplies and to pay most of the wages and salaries of employees. The trustees' attorneys advanced as "administrative expenses" other funds to pay the rest of the salaries and to pay for flowers and lighting, and ultimately to pay for utilities, such as gas, electricity, and telephone service. In this month those at the restaurant provided regular operating reports to the trustees.

6. Despite the words of the mortgage, the persons who had been associated with the corporation regarded the trustees as in possession of the corporate assets. Those persons realized, moreover, that at any moment they could be ousted from such possession as they had.

7. In January 1956 it had been the hope of the trustees that the corporation would make money, and that the chief stockholder of the corporation, Mr. Schaffer, would be able to get additional capital. To enable him to get such capital, the trustees at first refused to consider selling to third parties the assets covered by the mortgage. When these hopes were disappointed, Mr. Schaffer's son, who had been a manager of the enterprise, informed the trustees that the Schaffers wanted the trustees to conclude the business. The trustees did so by foreclosing the mortgage on February 2, 1956 and selling all the mortgaged assets on that day to one Levenson for $10,000. This sum, after the deduction of administrative and like expenses, came into the hands of the trustees.

8. Meanwhile, on January 13, 1956 the District Director had filed assessments against the corporation for its unpaid federal income taxes and federal unemployment taxes. Under Internal Revenue Code of 1954 § 6321, 26 U.S.C., 1958 ed., § 6321 these taxes became a lien. On September 13, 1956 the federal government filed these tax liens in the Registry of Deeds for Suffolk County. Then the United States demanded payment from the trustees. The trustees paid the taxes in full and brought this suit for a refund.

Plaintiffs contend that the federal tax claims were not supported by a senior lien because before the federal tax lien attached, the corporation had made to the trustees a valid mortgage to secure the debts of creditors. Plaintiffs rely on Internal Revenue Code of 1954 § 6323 (a), 26 U.S.C., 1958 ed., § 6323 which provides that " * * * the lien imposed by section 6321 shall not be valid as against any mortgage * * * until notice thereof has been filed by the Secretary." In support of their argument plaintiffs cite United States v. Gargill, 1st Cir., 218 F. 2d 556.

█ The shortest answer to plaintiffs may be found in R.S. § 3466. While the

wording of that statute is not too simple, the Supreme Court in United States v. Emory, 314 U.S. 423, 426, 62 S.Ct. 317, 86 L.Ed. 315 ruled that it "applies in terms to cases '[1] in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or [2] in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law * * * [or] [3] in which an act of bankruptcy is committed.'"

■ The case at bar falls within the first category. Allan's Restaurants, Inc. did not have sufficient property to pay its debts. The transfer made to the trustees (1) embraced all the corporate property, (2) gave the corporation no right to regain title to that property unless it paid an amount at least three times the value of the property, (3) left the corporation without any economic possibility of deriving business earnings sufficient to discharge its debt to the transferee, and (4) made the corporation's nominal possession illusory and terminable at will. While the trustees purported to leave the corporation in possession of the property, this was a sham. In reality they controlled every detail of the enterprise. They had daily reports on the business. They paid all the obligations of the corporation which could not be met out of daily income. At any moment they could make demand for payment of the note, which the corporation could not have paid. Such a situation constitutes a "voluntary assignment" as that term is used in R.S. § 3466. It is just as effective in stripping the transferor of possession as a consent receivership which has been held to be a voluntary assignment within § 3466. Price v. United States, 269 U.S. 492, 46 S.Ct. 180, 70 L.Ed. 373; United States v. Butterworth-Judson Corp., 269 U.S. 504, 46 S.Ct. 179, 70 L.Ed. 380. See United States v. Bruce Machine Co., D.Mass., 132 F.Supp. 525, 526.

Read narrowly, the *ratio decedendi* of United States v. Gargill is not to the contrary. The Court of Appeals addressed itself only to the question whether § 3466 applied in bankruptcy. [See 218 F.2d 556, 558–559.] Gargill does not explicitly rule on the issue whether apart from bankruptcy a transfer of the type here or there involved constituted a "voluntary assignment".

Another answer to plaintiffs' argument is that, even on the doubtful assumption that in Gargill the referee, myself in the District Court, and the Court of Appeals, were correct in concluding that the type of mortgage there involved was entitled to the protection of § 6323(a) of the Internal Revenue Code of 1954, 26 U.S.C., 1958 ed. § 6323(a), the Gargill doctrine was announced in a case where the Court of Appeals assumed that the mortgagor had a "substantial equity of redemption", (p. 560, col. 2, 10th and 11th lines from the bottom of the page), and that the mortgagor had "retention of control over and possession of the mortgaged property" (p. 561, col. 1, first full paragraph.) In the case at bar, Allan's Restaurant, Inc. had nothing of economic value left; those who had run the enterprise during the period of corporate control did not regard themselves as being any longer in possession; and the mortgagees were free at any moment to foreclose. The whole transaction had no purpose except permanently to transfer all the assets of the corporation to certain creditors unless, which was beyond economic probability and beyond any reasonable expectation, the corporation could get new capital, or the corporation could suddenly reverse its record of continuous, large losses. Such a transaction was so much like a complete divestiture as not to be that type of mortgage protected by § 6323(a). Despite Gargill, I would not, and I believe the Court of Appeals would not, extend the word "mortgagee" in that subsection to reach the case at bar.

Judgment for defendant.