384 P.2d 808

**INTERMOUNTAIN ASSOCIATION OF CREDIT MEN, a corporation, Plaintiff and Respondent,**

**v.**

**Frank BUSH, d/b/a Bush Tire Service, Defendant,**

**v.**

**UNITED STATES of America, Defendant and Appellant.**

No. 9796.

Supreme Court of Utah.

Aug. 26, 1963.

William T. Thurman, U. S. Atty., Walker E. Anderson, Asst. U. S. Atty., Salt Lake City, Joseph Kovner, Washington, D. C., for appellant.

Romney & Boyer, Salt Lake City, for respondent.

McDONOUGH, Justice.

Action to foreclose a chattel mortgage. From a judgment entered at pre-trial in favor of the plaintiff, defendant United States appeals in an attempt to enforce certain tax claims on the assets of defendant Frank Bush. Bush had consented to entry

of judgment against himself in accord with the prayer of the complaint.

Bush, proprietor of a tire repair business, and plaintiff entered into an agreement comprised of three instruments. One of them, executed on December 12, 1960, was an extension agreement. It was agreed therein that plaintiff would endeavor to obtain the consent of the creditors of Bush to an extension of time for the payment of some $74,708.82 owed to them; that said creditors would agree to accept pro-rata payments on their debts from Bush when demanded from him by plaintiff; that Bush would continue to carry on the business on a cash basis; and that Bush could cancel the agreement if plaintiff failed to obtain consent from all of the creditors.

The second instrument was a note in which Bush agreed to pay plaintiff on demand the sum of $74,708.82.

The third instrument, called a chattel mortgage, was executed to secure payment of the note. It covered the fixtures, etc. at Bush's business, and provided that Bush was to retain possession and control and continue his normal retail business. This instrument was filed as a chattel mortgage on December 13, 1960.

On January 25, 1961, the United States filed a notice of lien for taxes due and un-paid for the third quarter of 1960. Subsequent notices of liens were filed for the fourth quarter of 1960 and for the year 1961, during which time Bush continued in business under the agreement.

In May, 1962, plaintiff brought this action to foreclose the chattel mortgage.

The appellant asserts that under either of two theories the government's claim for taxes is superior to any claim of the plaintiff.

First, appellant claims superiority under Section 3466, Revised Statutes, which says in part that "whenever any person indebted to the United States is insolvent * * * the debts due to the United States shall be first satisfied * * * as to cases in which an act of bankruptcy is committed."[1] The acts of bankruptcy which appellant argues invoke this statute herein are (1) making a general assignment for the benefit of creditors, and (2) while insolvent voluntarily assenting to the appointment of a receiver to take charge of his property.[2]

Second, appellant claims superiority under the provisions of 26 U.S.C. (1958) Sections 6321, 6322 and 6323, which provide for a lien in favor of the United States for unpaid taxes, but includes the exception that such lien "shall not be valid as against any mortgagee * * * until notice thereof has been filed * * *."

1. 31 U.S.C. § 191 (1958).
2. That one of the specified situations enumerated in Sec. 3466 must be found in order to invoke the priority, see Anno. 169 A.L.R. 626.

Thus, under either theory it is critical to determine whether the transaction in this case is in substance as well as in name a chattel mortgage.[3] If, as appellant contends, the so-called mortgage is in substance an assignment for the benefit of creditors, the government takes a priority under Section 3466, since an assignment is sufficient to invoke the statute. The government will also have a valid lien superior to plaintiff's claim under appellant's second theory since an assignment is not excepted by Section 6323 from attachment of the lien.

Two primary characteristics of a mortgage are that the mortgagor retains the right to control the property mortgaged, and that he has a right to redeem it. In an assignment, on the other hand, possession and control are given to the assignee and there is no right to redeem, except to the extent that payment of all the creditors would defeat the purpose of the assignment.[4]

The case of United States v. Gargill, 218 F.2d 556 (1st Cir. 1955), relied upon by plaintiff, is very similar to the case at bar. While the facts there concerned a distribution in bankruptcy, the primary issue was still whether the transaction involved was a mortgage or an assignment for the benefit of creditors. In distinguishing the two types of transactions, the court used the following language:

"[The cases relied upon by the government] involved instruments labelled "mortgages" but where the equity of redemption was a sham and where actual possession of the "mortgaged" property of the debtor was intended to be acquired immediately after execution by the purported mortgagee who within a short time thereafter would commence to liquidate the property and transfer the proceeds thereof to the debtor's creditors. Here the mortgagor remained in actual possession of the property and carried on its business for almost one year after the execution of the mortgage, and there is no evidence that this mortgage was a sham transaction intended to disguise an actual assignment for the benefit of creditors. * * *

"One of the principal and necessary characteristics of a mortgage is the fact that it is a security transaction.

---

3. That the substance of the transaction is controlling, see United States v. Butterworth-Judson Corp., 269 U.S. 504, 46 S. Ct. 179, 70 L.Ed. 380 (1925).

4. In re Heleker Bros. Merc. Co., 216 F. 963 (Kan.1914); Pilson v. Rodeffer, 61 F.2d 976 (4th Cir. 1932); Garrison v. Pilliod Cabinet Co., 50 F.2d 1035 (10th Cir. 1931); In re Saxer, 34 F.2d 39 (E.D.Mich.1929); Wing v. United States, 208 F.Supp. 5 (D.C.Mass.1962); Stuart v. Bloch, 39 Okl. 556, 135 P. 1147 (Okl. 1913); Penzel Co. v. Jett, 54 Ark. 428, 16 S.W. 120 (1891); Winner v. Hoyt, 66 Wis. 227, 28 N.W. 380 (Wis.1886).

The mortgagor does not make an absolute and unequivocal conveyance of his property but retains an equity of redemption. There is nothing in this transaction which casts any substantial doubt on the possession by this mortgagor of a substantial equity of redemption. * * *

"Another element which supports the upholding of the mortgage status of the trustees is the retention of control over and possession of the mortgaged property by the mortgagor. This characteristic is one shared by mortgages and is not found in assignments for the benefit of creditors."

We think that the reasoning in that case is sound and applicable to the facts in the case at bar.

■ Here the mortgagor retained full possession and control of the business subject only to the restriction that all transactions be on a cash basis and under the threat of the demand provision of the note. Surely the restriction to cash transactions cannot be considered tantamount to loss of possession and control. And while the demand provision may make the tenure of the mortgagor less secure, its mere presence does not effectively divest him of control.

While the general circumstances surrounding this mortgage might possibly raise some question as to its real purpose, the entire tenor of the transaction suggests a desire on the part of the defendant to maintain himself in business and to overcome his financial difficulties, rather than to divide his assets among his creditors. In fact, the parties agreed at pre-trial to such a general characterization of the agreement. It should also be noted that frequently a valid mortgage is executed because of some financial difficulty of the mortgagor. Under the facts and circumstances disclosed the trial court was justified in its conclusion that the instrument under consideration is in substance as well as in name a valid chattel mortgage.[5]

■ Appellant contends that even if we find that the instrument in question is in fact a mortgage, and its execution not an act of bankruptcy, Section 3466 is nevertheless invoked by the voluntary consent filed by the defendant Bush to an entry of judgment against him in the foreclosure proceeding.

5. The mortgage also appears to comply with the federal standards for choateness which are required in order to give it priority over the federal lien. See, Note, "Priority of Federal Tax Liens," 8 Utah L.Rev. 252 (1963).

In support of this view appellant cites three cases which hold that consent by the defendant to the appointment of a receiver is a voluntary assignment for the benefit of creditors and thus invokes Section 3466.[6]

This contention has merit only if it can be said that consent by a mortgagor to a judgment against himself in a proceeding instituted to foreclose a valid chattel mortgage sufficiently alters the nature of that proceeding so as to change it to the equivalent of an appointment of a receiver or an assignment for the benefit of creditors. We do not believe that consent to foreclosure has that effect. To hold to the contrary would mean that the otherwise valid security of the mortgagee would be dependent on the mortgagor's choice of pleadings in the foreclosure suit. The rule in the cited cases cannot reasonably be extended to this type of situation.

Appellant also advances two additional arguments, both of which we find to be without merit.

Affirmed. Costs to plaintiff (respondent Intermountain Association of Credit Men).

HENRIOD, C. J., and CALLISTER, CROCKETT and WADE, JJ., concur.

6. Bramwell v. U. S. Fidelity & Guaranty Co., 269 U.S. 483, 46 S.Ct. 176, 70 L.Ed. 368 (1925); Price v. U. S., 269 U.S. 492, 46 S.Ct. 180, 70 L.Ed. 373 (1925); U. S. v. Butterworth-Judson Corp., 269 U.S. 504, 46 S.Ct. 179, 70 L.Ed. 380 (1925). See also New York v. Maclay, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754 (1932); Wing v. U. S., 208 F.Supp. 5 (D.C.Mass.1962).